IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Sepanta Jalali, | : | Case No. 2:20-cv-5071 |
| Plaintiff, | : | Judge Marbley |
| v. | : | Magistrate Judge Preston Deavers |
| Unum Life Insurance Company Of America, | : | |
| Defendant. | : | **ORAL ARGUMENT REQUESTED** |
| | : | |

**PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

This is an ERISA case asserting a claim for long-term disability benefits under 29 U.S.C. §1132(a)(1)(B).  In accordance with *Wilkins v. Baptist Healthcare System*, 150 F.3d 609 (6th Cir. 1998), Plaintiff Sepanta Jalali moves for judgment on the administrative record.  The motion is supported by the attached memorandum and the exhibits drawn from the administrative record.

Plaintiff also request oral argument.  S.D. Ohio L. R. 7.1(b)(2).

Respectfully submitted,

   /s/ Tony C. Merry
Tony C. Merry          (0042471)
Trial Attorney
Law Offices of Tony C. Merry, LLC
7100 N. High Street, Suite 302
Worthington, Ohio  43085
(614) 372-7114
(614) 505-6109 [fax]
tmerry@tmerrylaw.com
Attorney for Plaintiff

## **TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

MEMORANDUM IN SUPPORT OF MOTION ...................................................................1

INTRODUCTION ...............................................................................................................1

FACTS ...............................................................................................................................2

    Dr. Lin's Evaluation and Unum's Termination of Benefits .................................................3

    Jalali's Appeal ..................................................................................................................6

        The FCE .........................................................................................................................7

        Dr. Minard's Examination and Report...........................................................................7

        Mr. Atkinson's Report ..................................................................................................9

        Criticism of Dr. Lin's Evaluation ................................................................................9

    Unum's Final Decision ...................................................................................................10

ARGUMENT .....................................................................................................................11

I.       The standard of review is deferential but tempered by Unum's conflict of interest.........11

II.      Unum's termination of Jalali's disability claim was arbitrary and capricious..................12

    A.   Unum failed to adduce evidence that Jalali's condition had improved.  To the
          contrary, the evidence demonstrates that Jalali's condition had deteriorated.............12

    B.   Mr. Phillips improperly disregarded the FCE............................................................13

    C.  Mr. Phillips improperly imported an accommodation provision into the Unum
          policy........................................................................................................................15

    D.  Mr. Phillips failed to credit Jalali's evidence.............................................................17

    E.   Unum's reliance on Dr. Lin's opinion was unreasonable ............................................19

III.     Unum's conflict of interest infected its decision-making... ................................................19

IV.     The appropriate remedies in this case are to restore Jalali's benefits, with interest, and to declare that she is disabled to age 65 ....................................................23

V.      Jalali requests oral argument..................................................................25

CONCLUSION.................................................................................................26

CERTIFICATE OF SERVICE ...........................................................................26

## **TABLE OF AUTHORITIES**

**Cases**

*Baker v. The Hartford Life Ins. Co.*, No. 08-CV-6382FLW, 2010 WL 2179150 (D.N.J. May 28, 2010), *aff'd sub nom. Baker v. Hartford Life Ins. Co.*, 440 F. App'x 66 (3d Cir. 2011) ..............16

*Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003)..................................................3, 19

*Boyd v. Am. Elec. Power Sys. Long–Term Disability Plan*, Case No. 2:06-cv-161, 2007 WL 2778667 (S. D. Ohio Sept. 21, 2007)...........................................................................13

*Brooking v. Hartford Life & Accident Ins. Co.*, 167 F. App'x 544 (6th Cir. 2006) .....................14

*Caesar v. Hartford Life & Acc. Ins. Co.*, 464 F. App'x 431(6th Cir. 2012)..................................12

*Calvert v. Firstar Fin., Inc.*, 409 F.3d 286 (6th Cir. 2005).......................................................4, 20

*Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795 (1999) .........................................................16

*Chinn v. AT&T Umbrella Ben. Plan No.1*, No. CIV. 12-88-GFVT, 2013 WL 5468501 (E.D. Ky. Sept. 30, 2013)..............................................................................................20

*Cox v. Standard Ins. Co.*, 585 F.3d 295 (6th Cir. 2009) ...............................................................11

*Diaz v. Prudential Life Ins. Co. of America*, 499 F.3d 640 (7th Cir. 2007)........................... 18-19

*Farhner v. United Transp. Union Discipline Income Protection Program*, 645 F.3d 338 (6th Cir. 2011) ..............................................................................................................11

*Foust v. Lincoln Nat'l Life Ins. Co.*, 416 F. Supp. 3d 1319 (D. Utah 2019)................................25

*Giannone v. Metro. Life Ins. Co.*, 311 F. Supp. 2d 168 (D. Mass. 2004) ............................... 16-17

*Godmar v. Hewlett-Packard Co.*, 631 F. App'x 397 (6th Cir. 2015) ...........................................17

*Gorena v. Aetna Life Ins. Co.*, No. C17-532 MJP, 2018 WL 3008873 (W.D. Wash. June 15, 2018) ...................................................................................................... 24-25

*Haning v. Hartford Life & Accident Ins. Co.*, 140 F. Supp. 3d 65
(S.D. Ohio 2015) .................................................................................. 19-20, 22, 24

*Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758 (7th Cir. 2010) ........................................... 15, 17

*Huffaker v. Metro. Life Ins. Co.*, 271 F. App'x 493 (6th Cir. 2008) ................................................ 14

*Jalali v. Unum Life Ins. Co. of Am.*, No. 2:12-CV-00828, 2014 WL 1212708 (S.D. Ohio Mar. 24, 2014), appeal dismissed (July 9, 2014) ("*Jalali I*") ............................................................. *passim*

*Jalali v. Unum Life Ins. Co. of Am.*, No. 2:16-CV-512, 2018 WL 4468207 (S.D. Ohio Sept. 18, 2018) ("*Jalali II*") .................................................................................................. *passim*

*Kaviani v. Reliance Standard Life Ins. Co.*, 799 F. App'x 753 (11th Cir. 2020) ......................... 17

*Kramer v. Paul Revere Life Ins. Co.*, 571 F.3d 499 (6th Cir. 2009) ............................................. 12

*Love v. Nat'l City Corp. Welfare Benefits Plan*, 574 F.3d 392 (7th Cir. 2009) ............................ 19

*McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126 (2d Cir. 2008) ..................................... 22-23

*McCollum v. Life Ins. Co. of N. Am.*, 495 F. App'x 694 (6th Cir. 2012) ...................................... 12

*Medefesser v. Metro. Life Ins. Co.*, No. 6:18-CV-00041-MK, 2019 WL 6481794 (D. Or. Sept. 5, 2019), report and recommendation adopted, No. 6:18-CV-00041-MK, 2019 WL 6467818 (D. Or. Dec. 2, 2019) ................................................................................................ 25

*Miller v. United Welfare Fund*, 72 F.3d 1066 (2d Cir. 1995) ...................................................... 17

*Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623 (9th Cir. 2009) .................................... 20

*Mulder v. Loc. 705, Int'l Bhd. of Teamsters, Pension Fund*, 794 F. App'x 451 (6th Cir. 2019) .................................................................................................................... 24

*Pelchat v. UNUM Life Ins. Co. of Am.*, No. 3:02–CV–7282, 2003 WL 21105075 (N.D. Ohio Mar.25, 2003) .................................................................................................... 17

*Rabuck v. Hartford Life and Accident Ins. Co.*, 522 F.Supp.2d 844 (W.D. Mich. 2007) ........ 12-13

*Rekstad v. U.S. Bancorp*, 451 F.3d 1114 (10th Cir. 2006) .......................................................... 18

*Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*,
85 F.3d 455 (9th Cir. 1996) ................................................................................. 15-16, 17

*Sanford v. Harvard Indus., Inc.*, 262 F.3d 590 (6th Cir. 2001) ......................................................23

*Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299 (6th Cir. 2010) ....................................11

*Shaw v. AT & T Umbrella Ben. Plan No. 1*, 795 F.3d 538 (6th Cir. 2015) ....................................16

*Univ. Hosp. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839 (6th Cir. 2000) ............................11

*Voltz v. Chrysler Grp. LLC—UAW Pension Plan*, 63 F. Supp. 3d 770 (N.D. Ohio 2014) ..........16

*Wagner v. Am. United Life Ins. Co.*, 731 F. App'x 495 (6th Cir. 2018)................................. 23-24

*Wenner v. Sun Life Ins. Co. of Canada*, 482 F.3d 878 (6th Cir. 2007)..........................................23

*White v. Eaton Corp. Short Term Disability Plan*, 308 F. App'x 713 (4th Cir. 2009).................19

**Statutes And Rules**

28 U.S.C. §1132 (a)(1)(B) ............................................................................................................2, 24

S.D. Ohio L. R. 7.1(b)(2). ...............................................................................................................25

## <u>MEMORANDUM IN SUPPORT OF MOTION</u>

### INTRODUCTION

More than seven years ago this Court, in *Jalali v. Unum Life Ins. Co. of Am*., No. 2:12-CV-00828, 2014 WL 1212708 (S.D. Ohio Mar. 24, 2014), appeal dismissed (July 9, 2014) ("*Jalali I*"), held that Unum acted arbitrarily and capriciously in terminating Plaintiff Sepanta Jalali's long-term disability benefits.  Citing, among other records, an opinion by Dr. Robert Perkins, the Court noted that because "the medical evidence relied on in making the determination to terminate Plaintiff's LTD benefits weighs strongly in her favor, Defendant is unable to prevail."  *Id*., *6.

Jalali's medical condition has not improved in the intervening seven years.  Indeed, as Dr. Alex Minard, another independent physician who examined Jalali, wrote,

> It is my opinion that Sepanta's lumbar condition has worsened mildly to moderately since Dr. Perkins' evaluation in 2011 as evidenced by her more recent MRI which showed worsening of findings at both L4-5 and L5-S1 level.  This is not unexpected.  This is in fact the normal and expected natural history of such injuries.

ECF 13-8, PID 3754.[1]

Notwithstanding Dr. Minard's opinion, and a raft of other evidence Jalali submitted in support of her claim, Unum once again decided that Jalali was no longer disabled.  And while Unum's decision in *Jalali I* was predicated on its incorrect conclusion that Jalali could work on a part-time basis,[2] Unum now remarkably asserts that Jalali can work full-time.  ECF 13-9, PID 4047 ("Our appeal review has concluded Dr. Jalali is physically capable of performing sedentary level work on a full-time basis.").

---

[1] Unum filed the administrative record under seal on March 3, 2021.  The references are to the document number and the page identification number assigned to each page of the record by the Court's ECF system.

[2] *Jalali I*, at *3 ("Defendant [argues] that: (1) it has medical evidence that Plaintiff can in fact work in a gainful occupation <u>on a part-time basis</u> …") (emphasis added).

As was the case in *Jalali I*, and as will be demonstrated in the pages that follow, the evidence in this record is similarly "strongly in [Jalali's] favor." The Court should enter judgment on the administrative record in favor of Jalali and direct that her benefits be retroactively reinstated, with interest.

Because of Unum's history in the handling of her claim, Jalali also asks the Court to enter an order "determining [Jalali's] right to future benefits." 29 U.S.C. §1132(a)(1)(B). This issue is addressed in Section IV, below.

## FACTS

In 2007, while she was a medical student, Jalali was severely injured in a car accident. She sustained a concussion and suffered damage to her lower spine. The facts of that accident, and Unum's attempt to claim for itself the proceeds of Jalali's insurance settlement that ensued, are detailed in this Court's decision in *Jalali v. Unum Life Ins. Co. of Am.*, No. 2:16-CV-512, 2018 WL 4468207 (S.D. Ohio Sept. 18, 2018) ("*Jalali II*").

Jalali graduated from medical school and began work as a medical resident with Mt. Carmel Health System. Ultimately, she became disabled from working, underwent two spinal surgeries, and applied for long-term disability benefits from Unum. *Jalali II*, at *1.

Unum terminated Jalali's long-term disability benefit in 2012 after it determined that she had the capacity for part-time work but refused to engage in part-time employment. *Jalali I*, at *2. This Court held that Unum had mis-applied the provisions of its own insurance policy, *id.*, at *4; concluded that the evidence of disability "weighs almost entirely in her favor," *id.*, at *5; and directed Unum to reinstate Jalali's claim.

Jalali's claim continued, but Unum soon thereafter suspended any benefit payments to Jalali due to its incorrect assumption that it was entitled to the proceeds of Jalali's insurance

2

settlement. That dispute was settled after this Court, in *Jalali II*, remanded the matter to Unum for additional factfinding. *Jalali II* at \*7.

In 2015 Jalali was injured in a second automobile accident. ECF 13-8, PID 3665, 3667-3668. She sustained a second concussion, *id*., PID 3669, which caused her migraine headaches to recur, and they have continued since the accident, modulated to some degree by Botox injections. *Id*., PID 3669-3671. The 2015 accident caused further injury to Dr. Jalali's spine, as reflected in imagery that was taken following the accident:

> I had an MRI done after the accident, and I had reherniated my back in the two areas where I previously had surgery. So any surgery that I had previously had basically – in those locations I developed reherniations. And then there was a new herniation at one of the same levels where I had surgery.

ECF 13-8, PID 3671 (Jalali Deposition, p. 27).

### Dr. Lin's Evaluation and Unum's Termination of Benefits

On January 2, 2018, Jalali appeared, at Unum's request, for a medical examination conducted by Dr. Eugene Lin. The request for the examination was apparently occasioned by a check mark by Dr. James Natalie, Jalali's new physician, that suggested that Jalali could work in a sedentary position. ECF 13-7, PID 3090.[3]

Dr. Lin's evaluation and report was, at best, deficient and unreliable. And his conclusion that Jalali could work gives substance to the Supreme Court's observation that "physicians repeatedly retained by benefits plans may have an incentive to make a finding of 'not disabled' in order to save their employers money and to preserve their own consulting arrangements." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832 (2003) (cleaned up). *See also*

---

[3] Unum later referred to Dr. Natalie as Jalali's "long-standing" physician. ECF 13-9, PID 4046. That is incorrect. Dr. Lewis Seeder was Jalali's long-time physician, *see Jalali I* at \* 2. Dr. Natalie was assigned Jalali's file when Dr. Seeder retired in 2016. ECF 13-7, PID 3385. At the time of his 2017 "check mark," Dr. Natalie's interactions with Jalali had been recent and infrequent.

*Calvert v. Firstar Fin., Inc*., 409 F.3d 286, 292 (6th Cir. 2005) ("As the plan administrator, Liberty had a clear incentive to contract with individuals who were inclined to find in its favor that Calvert was not entitled to continued LTD benefits.").

In her subsequent appeal, Jalali identified several errors and misstatements in Dr. Lin's report.[4]  First, Jalali noted that she had been examined several times by different physicians (including by Unum's own consultant, Dr. Perkins), but Dr. Lin's examination "was nothing like any of these."  ECF 13-8, PID 3829-3830, Jalali Aff. ¶6).  She said that Dr. Lin was "rude and argumentative from the beginning of my examination," *id*., ¶7, and from the outset was "disposed to conclude that I was not disabled."  *Id*., ¶ 6.

Jalali reported that Dr. Lin's examination "was the most cursory examination I have ever experienced.  Most of my time with Dr. Lin was spent sitting in his office answering his questions.  The actual physical examination was brief."  *Id*., ¶10.

"I sat on a chair through most of the examination, and Dr. Lin barely touched me.  Dr. Lin says that I sat comfortably, but in fact I used my lumbar pillow and my tote bag to prop myself against and to change position frequently."  *Id*., ¶11.

Jalai also expressly challenged several of Dr. Lin's "findings."  For example, Jalai reported, "Dr. Lin wrote, 'Note is made of positive Hoover's sign on straight leg raise.'  I am familiar with the Hoover's sign.  The Hoover's sign must be conducted while a patient is lying flat on the examination table in a supine position.  I did not lie flat on the examination table.  I attempted but was unable to do so, and he abandoned that request.  He did not conduct a straight leg raise test in a supine position, as I was never in a supine position during the examination.  Thus, there would have been no way to look for the Hoover's sign."  *Id*., ¶ 13.

---

[4] Jalali is a physician, so her assessment of Dr. Lin's examination and report carries more weight than might the observations of a non-trained claimant.

4

Similarly, "Dr. Lin wrote that 'Spurling's sign was negative.' This test requires the examiner to turn the patient's head to the left and right and place downward axial loading pressure while the patient's head is turned. Dr. Lin ONLY placed axial loading pressure on top of my head ONCE while my head was in the midline position and not turned to either side." *Id.*, ¶18.

Regarding Jalali's range of motion, she reported that "[a]ll measurements that Dr. Lin made (such as range of motion) were made 'in the air.' He did not touch me with any measuring devices, he did not ask me to move or remove my clothing during these measurements, and he did not ask me to move my hair." *Id.*, ¶12. Jalali continued, "Dr. Lin also wrote about the range of motion in my hips and knees. Dr. Lin did not assess the range of motion of my knees. Regarding my hips, he only asked me to move from side to side while I was standing up. This is the only hip-related movement that was visualized by him." *Id.*, ¶20.

Jalali also challenged Dr. Lin's findings regarding tenderness and pain. "Dr. Lin wrote that there was diffuse tenderness to palpation over the right knee. Dr. Lin did not palpate my knee, and in any case, I had no pain in my right knee at that time. The only contact that he had with my knee was when he tried repeatedly and with no avail to elicit a strong reflex in my knees." *Id.*, ¶21. "Dr. Lin also wrote, 'There is tenderness to palpation diffusely over bilateral extremities.' Dr. Lin did not palpate my lower extremities. He only touched my feet." *Id*, ¶22.

Jalali also criticized Dr. Lin's evaluation of Waddell's signs.[5] She averred:

Dr. Lin also wrote, "This would indicate 4/5 positive Waddell's signs." I am familiar with Waddell's signs, which are a group of physical tests intended to identify malingering. Dr. Lin misrepresents both that he performed the battery of Waddell's tests and the results of the couple that he did perform.

For example, Dr. Lin very lightly touched my back moving from the thoracic to lumbar region only and asked, "Is this tender?" Tenderness with light touch is

---

[5] Waddell's is a now-discredited "test" that once purported to detect malingering. *See, infra*, at p.10.

one positive sign that the pain is in your head. However, I very clearly indicated that it was not tender when he touched me but that there are localized areas of pain that I experience on and off specifically in the areas where I have herniated discs, not throughout the entire spine at every location. This test was NEGATIVE.

Another component of Waddell's testing is axial loading. Essentially, the examiner pushes on the top of the patient's head to see if they have any pain in the lower back. If they do, this is a positive Waddell sign. However, it is not positive (and not malingering) if this axial loading causes any neck pain. Dr. Lin did create axial loading by pushing on top of my head, but it did NOT create any lower back pain. This test was NEGATIVE.

A third part of Waddell's is distracted straight leg raise. He did not do a straight leg raise test at any time during the examination. I was fully aware of all of his actions. This test was NEGATIVE.

ECF 13-8, PID 3829-3830, Jalali Aff. ¶¶ 14-17.

Based largely on Dr. Lin's opinion, Unum concluded that Jalali could work on a full-time basis, and it terminate her benefits. ECF 13-7, 13-8; PID 3482-3489.

### Jalali's Appeal

Jalali filed a comprehensive appeal of Unum's decision. ECF 13-8, PID 3554-3734; 3741-3804; 3828-3830.

In addition to Jalali's affidavit, the appeal included a report of a functional capacity evaluation ("FCE") conducted by Scott Secrest, an occupational therapist, ECF 13-8, PID 3556-3576; a report following an independent medical examination conducted by Dr. Alexander Minard, ECF 13-8, PID 3750-3754; and a vocational assessment conducted by Joseph Atkinson, a Vocational Rehabilitation Consultant, ECF 13-8, PID 3760-3763.

*The FCE*

Mr. Secrest, who conducted the FCE on July 10, 2018, concluded that Dr. Jalali was not

able to work, even in a sedentary capacity.[6]  He wrote:

> For all practical purposes, she demonstrates <u>sub-sedentary capacity</u> as she is
> unable to perform all material handling tasks with at least 10 lb.  Further, most
> vocations in a sedentary range require constant sitting, often unsupported as the
> hands are used for repetitive tasks.  Conversely, Mrs. Jalali demonstrated frequent
> offloading of the spine through counterforce of the hands and arms on the arm
> rests.  <u>She was also unable to tolerate uninterrupted sitting for more than
> approximately 20 minutes</u>.  Accommodation to allow for positional changes, as
> needed, between sitting, standing and walking within a competitive vocational
> environment would most likely be considered <u>unreasonable</u> for most employers.

ECF 13-8, PID 3558 (emphasis added).  "Therefore," he concluded, "I cannot confidently

recommend competitive employment for the client, even within a sedentary work environment."

*Id*.

*Dr. Minard's Examination and Report*

Dr. Alex Minard is a physiatrist affiliated with Marietta Memorial Hospital.  ECF 13-8,

PID 3750.  He examined Jalali on October 4, 2018 and provided a five-page written report.  *Id*.,

PID 3750-3754.

Dr. Minard's impressions, upon examination, were as follows:

1) Lumbar disc herniation at L4-5 and L5-S1 with persistent and chronic
   radiculopathy especially of the right lower limb secondary to persistent
   and/or recurrent disc herniation at L4-5 with abutment of the right L4
   nerve root.
2) Lumbar degenerative disc disease.
3) Lumbar facet arthropathy.
4) Thoracic degenerative disc disease and disc herniation at T10-11.
5) Chondromalacia of the right knee, grade II-III.
6) Chronic migraine headaches.
7) Traumatic brain injury x 2, one being mild, one being moderate.

---

[6] Mr. Secrest concluded that Jalali put forth good effort during the course of the testing and that the FCE should,
therefore, be considered to be "an accurate representation of her safe work abilities."  ECF 13-8, PID 3557.

*Id*., PID 3753.

Based on his examination and his review of the results of the FCE, Dr. Minard opined that Dr. Jalali was totally disabled from working. He wrote, "It is my opinion that Mrs. Sepanta Jalali is <u>totally and permanently disabled from any employment</u>. She is limited in ability to mobilize, bend, reach, lift and carry. She is also limited in her ability to tolerate sitting. She also presents with an abnormal gait and hip weakness making her a fall risk in any work environment." *Id*., PID 3753.

Dr. Minard was provided with the report of an IME that Dr. Robert Perkins had completed at Unum's request in 2011[7] and was asked whether Dr. Jalali's medical condition had changed since that time. Dr. Minard wrote, "It is my opinion that Sepanta's lumbar condition <u>has worsened mildly to moderately</u> since Dr. Perkins' evaluation in 2011 as evidence by her more recent MRI which showed worsening of findings at both L4-5 and L5-S1 level. This is not unexpected. This is in fact the normal and expected natural history of such injuries." *Id*., PID 3754.[8]

Finally, Dr. Minard was asked to assess whether any of Dr. Jalali's complaints could be attributed to malingering. He wrote, "It is my opinion that her symptoms and her physical examination findings are consistent with her objective testing (i.e. her MRI results). I found her to be reliable and consistent. Her functional capacity examination likewise found her to be highly reliable." *Id*.

---

[7] Dr. Perkins' report, which is the same report the Court discussed in *Jalali I*, at *2, appears in the record at ECF 13-8, PID 3726-3735.
[8] The recent MRIs were also submitted in support of Jalali's appeal and appear in the record at ECF 13-8, PID 3703-3710.

*Mr. Atkinson's Report*

Joseph Atkinson, a vocational rehabilitation consultant, reviewed a variety of documentation and provided a comprehensive written report, which Jalali submitted to Unum as part of her appeal. ECF 13-8, PID 3760-3763. Mr. Atkinson's report points out the flaws in Unum's transferrable skills analysis, most notably Unum's conclusion that Dr. Jalali is capable of performing sedentary work. Mr. Atkinson wrote:

> [C]omputer based, sedentary occupations typically require sitting constantly, or more than 5 and 2/3 of the work day. The medical file does not support Dr. Jalali can perform sitting to such an extent. Sedentary occupations require prolonged focused attention. Someone who regularly needs to alternate among sitting, standing and walking would have significant difficulty meeting expected productivity requirements at a computer based, sedentary occupation. Even when sitting, Dr. Jalali must regularly readjust her posture to redirect the weight on her spine and get relief. Per the observations from the FCE, she accomplishes this by adjusting her posture using the arm rests. This would be an additional distraction and impact her productivity.

ECF 13-8, PID 3763.

Mr. Atkinson concluded, "The documentation consistently indicates Dr. Jalali has a poor prognosis for return to work and is functioning poorly. The consultant feels the medical does not support the ability to return to work in any capacity on a full time basis. As demonstrated in the FCE, Dr. Jalali would have difficulty functioning even at a sedentary level. Therefore, <u>Dr. Jalali is unable to return to work at the gainful wage in any occupation</u>." *Id.* (emphasis added).

*Criticism of Dr. Lin's Evaluation*

Jalali's appeal challenged Dr. Lin's report in several ways. As noted before, Jalali submitted an affidavit that cataloged the several falsehoods in Dr. Lin's report. In addition to Jalali's affidavit, Mr. Secrest and Dr. Minard each criticized Dr. Lin's report. Mr. Secrest, the occupational therapist who conducted the FCE, submitted a supplemental statement, ECF 13-8,

PID 3578-3579, addressing aspects of Dr. Lin's evaluation.  Among Mr. Secrest's assessments was the following:

> [Dr. Lin's] report indicates that the client was noted to "sit constantly during the interview process".  Later in the report, Dr. Lin stated, "please note that the claimant is noted to sit comfortable on the exam room table during the interview".  There was no indication of the duration of sitting time.  Conversely, the functional capacity evaluation makes note of premature breaks from sitting at 17 minutes and at 43 minutes with reports from the client of increased symptomology.  Furthermore, it was noted that the client made frequent postural adjustments with utilization of the arms rests for external support.

ECF 13-8, PID 3578.

Dr. Minard was asked to opine whether, in his opinion, Jalali was either malingering or exaggerating her symptoms.  He concluded that she was not and, *sua sponte*, criticized Dr. Lin's reliance on the Waddell's signs.  "Dr. Lin's report indicates four of five Waddell's signs were positive and this seems to be the main basis of his suggestion of malingering or exaggeration.  Waddell signs are not considered a reliable indicator of malingering and it has been recommended since at least the 1990's that medical examiners cease to use them. (cf. Spine 23(21): 2367-2371. NOV 1998)." (emphasis added).[9]

### Unum's Final Decision

Unum denied Jalali's appeal by letter dated November 29, 2018 and authored by Kurt Phillips.  Mr. Phillips' letter is deficient in too many respects to catalog completely, but one example demonstrates the "quality" of his reasoning.

Mr. Phillips wrote, "Dr. Jalali returned to work on a part-time basis in 2009 and later stopped working to pursue [an] MBA.  As of 2011, an independent medical evaluation confirmed her capacity to perform sedentary work on at least a part-time basis." ECF 1309, PID 4045

---

[9] With her appeal, Jalali also submitted three journal articles documenting that use of Waddell's signs is not recommended for individuals with a documented organic basis (such as MRIs) for spine pain.  ECF 13-8, PID 3785-3799.

(emphasis added).  The independent medical evaluation to which Unum referred is the one performed by Dr. Perkins, the same evaluation that the Court held in *Jalali I* did <u>not</u> establish that Jalali had the capacity for part-time work.  *Jalali I*, at \*5.  The Court also held in *Jalali* I that the part-time work Jalali had been performing in 2009 did not satisfy the policy definition of gainful employment.  *Id.*, \*4-5.[10]

Other deficiencies in Mr. Phillips' decision are noted below.

## ARGUMENT

I.      **The standard of review is deferential but tempered by Unum's conflict of interest.**

This Court has previously held, and Jalali does not contest, that Unum is entitled to a deferential standard of review.  *Jalali I*, at \*3.  Nevertheless, because Unum both pays the claims and decides who is entitled to receive payment, the deferential standard of review is "tempered" by Unum' structural conflict of interest.  *Farhner v. United Transp. Union Discipline Income Protection Program*, 645 F.3d 338, 342 (6th Cir. 2011), citing *Univ. Hosp. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 (6th Cir. 2000).

A tempered review contemplates "a somewhat more searching review of a plan administrator's decision," *Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 311–12 (6th Cir. 2010), and "[i]n close cases," requires the Court to "consider that conflict as one factor among several in determining whether the plan administrator abused its discretion in denying benefits."  *Cox v. Standard Ins. Co.*, 585 F.3d 295, 299 (6th Cir. 2009).

The effect of Unum's conflict of interest, and the extent to which it infected the review of Jalali's claim, is discussed in Part III, below.

---

[10] Jalali submitted as part of her appeal a copy of the Court's opinion in *Jalali I*, ECF 13-8, PID 3720-3725, so there is no excuse for Mr. Phillips not being aware of the Court's decision.

## II. Unum's termination of Jalali's claim was arbitrary and capricious.

### A. Unum failed to adduce evidence that Jalali's condition had improved.  To the contrary, the evidence demonstrates that Jalali's condition had deteriorated.

Having long ago determined that Jalali was disabled from *any occupation*, the first relevant question is whether Unum subsequently obtained evidence permitting a conclusion that Jalali's condition had improved.  *See Kramer v. Paul Revere Life Ins. Co*., 571 F.3d 499, 507 (6th Cir. 2009) (holding  cancellation of benefits by a plan administrator to be arbitrary and capricious when done in the absence of evidence showing that the claimant's condition had improved, and no explanation existed for the apparent discrepancy from earlier assessments).

The answer, of course, is "no."  To the contrary, the imaging studies in 2015 unambiguously portray a woman whose health is in decline.  While Jalali's original claim rested on her significant lumbar spine injuries, the 2015 MRIs demonstrate that Jalali's condition has deteriorated since Unum originally concluded that Jalali was disabled.  Dr. Minard specifically opined that Jalali's condition had deteriorated since Dr. Perkins's 2011 evaluation, noting that such deterioration was natural and expected.[11]

Unum's failure to identify any evidence documenting improvement in Jalali's medical condition renders its decision to terminate Jalali's benefits fatally defective.  *See Kramer*, 571 F.3d at 507.  *See also McCollum v. Life Ins. Co. of N. Am*., 495 F. Appx. 694, 704 (6th Cir. 2012) ("LINA's denial of benefits is even more surprising given the many years that it classified McCollum as disabled."); *Caesar v. Hartford Life & Acc. Ins. Co*., 464 F. Appx. 431, 436 (6th Cir. 2012) ("Hartford's previous payment of benefits weighs against its decision to terminate those benefits."); *Rabuck v. Hartford Life and Accident Ins. Co*., 522 F.Supp.2d 844, 872 (W.D.

---

[11] Unum did not provide a copy of Dr. Perkins's 2011 report to Dr. Lin, and it did not ask him for an opinion on whether Jalali's condition had improved over time.

12

Mich. 2007) (characterizing prior payment of disability benefits as a circumstance that weighs against the propriety of discontinuing payments); *Boyd v. Am. Elec. Power Sys. Long–Term Disability Plan*, Case No. 2:06-cv-161, 2007 WL 2778667 *7 (S. D. Ohio Sept. 21, 2007) ("The fact that defendant's decision to terminate benefits was not based on new significant evidence or evidence of improvement since the prior determination of disability weighs against the propriety of defendant's decision to terminate plaintiff's LTD benefits.").[12]

### B. Mr. Phillips improperly disregarded the FCE.

Mr. Secrest, the occupational therapist, concluded that Jalali's overall physical strength was in the "sub-sedentary" range, and he concluded that Jalali's limited ability to sit would likely preclude gainful employment. Mr. Phillips disregarded the FCE, and offered three reasons for doing so.

First, Mr. Phillips said that the FCE was completed five months after Jalali's claim was denied. ECF 13-9, PID 4046. But if this were a valid reason for rejecting evidence, then no claimant could successfully challenge a claim decision because all of her evidence would, by definition, be after (perhaps several months after) the claim denial. And in any case, the FCE was fully consistent with Dr. Perkins's exam from several years earlier.

Second, Mr. Phillips said that the FCE was inconsistent with Jalali's "long standing medical provider" (Dr. Natalie). ECF 13-9, PID 4046. This is wrong on three levels. First, Dr. Natalie was not Jalali's "long standing" medical provider. That was Dr. Seeder.

---

[12] Mr. Phillips suggested that Dr. Natalie's checkmark constituted evidence of improvement. ECF 13-9, PID 4045-4046. But absent any explanation from Dr. Natalie of whether or why he thought Jalali's condition had improved, Dr. Natalie's checkmark is just that, a checkmark. If it wanted a considered opinion, Unum might have provided Dr. Natalie with a copy of Dr. Perkins's 2011 report and asked Dr. Natalie if he though Jalali's condition had improved since then.

Second, the FCE did not conflict with Dr. Natalie's clinical findings. *See, e.g.,* Dr.

Natalie's office note from October 27, 2017:

1. Follow up/flare up of back pain
2. R low back sharp / burning pain radiating R hip and into R lateral thigh. R foot stabbing pain
3. Intermittent pain 9/10

She presents in follow-up with chronic pain. She reports flared up pain in the right side of her lower back. Intermittent in time course. Burning in quality. A little higher up in the right lumbar spine on the right she also reports stabbing sensations 9/10 in severity. No injury. Worse with coughing, Valsalva. Referral down the leg to the posterior thigh, lateral knee. Also with bottom of the right foot symptoms greater over the lateral aspect.

+numbness feet right D2-3 and left D5, chronic and unchanged. No weakness of the legs.

….increased right sided low back pain, right lumbar paraspinal tenderness, +right seated SLR.

ECF 13-8, PID 3896.

In any case an FCE, not a physician's report, is the gold standard for objectively measuring a claimant's capacity for employment. *Huffaker v. Metro. Life Ins. Co.*, 271 F. Appx. 493, 500 (6th Cir. 2008) ("A functional capacity evaluation is a reliable and objective method of gauging the extent one can complete work-related tasks."); *Brooking v. Hartford Life & Accident Ins. Co.*, 167 F. Appx. 544, 549 (6th Cir. 2006) (describing an FCE as "objective evidence" of the claimant's back pain).

Third, Mr. Phillips concluded that the results of the FCE "were largely consistent with the ability to perform sedentary work." ECF 13-9, PID 4046. But this conclusion has no basis in fact. Three professionals – Mr. Secrest, Mr. Atkinson, and Dr. Minard, all observed that the FCE demonstrated that Jalali was disabled from working.

Finally, Mr. Phillips conceded in his letter that "sedentary work" requires "lifting, carrying, pushing and pulling up to 10 pounds …" ECF 13-9, PID 4049. Mr. Secrest concluded

14

that Jalali did not have the required sedentary capacity, sitting restrictions aside, to lift, carry, push or pull the required 10 pounds.  ECF 13-8, PID 3558.  No one has challenged that aspect of the FCE.

The FCE provides objective evidence that Jalali cannot work.  Unum's unsupported speculation about the FCE does not.  *Holmstrom v. Metro. Life Ins. Co*., 615 F.3d 758, 771, n. 12 (7th Cir. 2010) ("MetLife argues that her crying suggested poor effort and undermined the genuineness of her pain complaints.  That is sheer speculation.  The evidence could easily support the opposite conclusion. <u>We, and those who pay for disability insurance, are entitled to rely on the report of the FCE and the professionalism of the examiner instead of such speculation</u>.") (emphasis added).

**C. Mr. Phillips improperly imported an accommodation provision into the Unum policy.**

Unum assumed, without evidence, that some (unidentified) potential employer would be able and willing to accommodate Jalali's restrictions.  As quoted by Mr. Phillips, however, Unum's policy does not authorize Unum to consider an accommodation.  It merely says, "After 24 months of payments, you are disabled when UNUM determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience."  ECF 1309, PID 4050

To read an accommodation provision into the policy impermissibly expands the policy and imposes on claimants an additional requirement for coverage.  *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 459–60 (9th Cir. 1996) ("To premise total occupational disability … on having 'work available for which she is qualified' <u>that would have accommodated Saffle's limitations</u> is thus inconsistent with the Plan. … To construe the Plan this way … effectively imposes a new requirement for coverage.

15

However, an administrator lacks discretion to rewrite the Plan.") (emphasis added). *Cf.*
*Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 803 (1999) ([W]hen the SSA determines
whether an individual is disabled for SSDI purposes, it does not take the possibility of
'reasonable accommodation' into account, nor need an applicant refer to the possibility of
reasonable accommodation when she applies for SSDI.").

Some benefit plans expressly permit claims administrators to consider accommodations.
*See, e.g., Shaw v. AT & T Umbrella Ben. Plan No. 1*, 795 F.3d 538, 541–42 (6th Cir. 2015) (plan
language defined disability as an illness or injury that prevented a claimant "from engaging in
any occupation or employment (with reasonable accommodation as determined by the Claims
Administrator), for which [he is] qualified or may reasonably become qualified").

Similarly, it would not be unreasonable for a claims administrator to consider potential
accommodations where an actual employer expressed a willingness to accommodate an
individual's disability. *See, e.g., Baker v. The Hartford Life Ins. Co.*, No. 08-CV-6382FLW,
2010 WL 2179150, at *16 (D.N.J. May 28, 2010), *aff'd sub nom. Baker v. Hartford Life Ins. Co.*,
440 F. App'x 66 (3d Cir. 2011) ("If Bloomberg has indicated that it is willing to [accommodate
Baker's limitations], Hartford is entitled to credit Bloomberg's representation."); *Voltz v.*
*Chrysler Grp. LLC—UAW Pension Plan*, 63 F. Supp. 3d 770, 780 (N.D. Ohio 2014) ("There is
no objective record evidence that Chrysler cannot accommodate Voltz's skin condition.").

In this case, two occupational professionals, Mr. Secrest and Mr. Atkinson, have opined
that Jalali's restrictions cannot be accommodated. Unum's suggestion that some unknown
employer would accommodate them is nothing but speculation, and speculation is not evidence.
*See, e.g. Giannone v. Metro. Life Ins. Co.*, 311 F. Supp. 2d 168, 178 (D. Mass. 2004) ("[O]ne
would think that substantial evidence means actual evidence, not third-hand speculation");

*Holmstrom*, 615 F.3d at 775 ("the subsequent reviewers' speculation is not a substitute for evidence"); *Miller v. United Welfare Fund*, 72 F.3d 1066, 1073 (2d Cir. 1995) ("Aetna's speculation, without supporting medical evidence, is insufficient to justify the Fund's decision"); *Kaviani v. Reliance Standard Life Ins. Co.*, 799 F. App'x 753, 758 (11th Cir. 2020) ("The district court was correct to reject Reliance's speculation in favor of evidence showing that Kaviani was experiencing debilitating disability").

It is well-settled that an insurer may not rewrite its plan to include requirements that do not appear within the text of the document. *Jalali I* at *5, citing *Saffle* and *Pelchat v. UNUM Life Ins. Co. of Am.*, No. 3:02–CV–7282, 2003 WL 21105075 at *11 (N.D. Ohio Mar.25, 2003).

Because the policy language does not provide for it, because Jalali's evidence establishes that her restrictions cannot be accommodated, and because Unum has mustered no evidence that Jalali's restrictions would be accommodated by a future employer, Unum's speculation that Jalali's restrictions can be accommodated renders its decision arbitrary and capricious.

### D. Mr. Phillips failed to credit Jalali's evidence.

As noted above, Unum gave short shrift to the FCE. It addressed Dr. Minard's medical evaluation and Mr. Atkinson's vocational assessment in much the same way.

Mr. Phillips discounted Dr. Minard's examination because it was performed eight months after Jalali's benefits had been denied. ECF 13-9, PID 4046. As with the FCE, however, Dr. Minard's report was fully consistent with Dr. Perkins's 2011 observations.[13]

---

[13] Mr. Phillips' reference to the eight-month lag is a classic example of a claims administrator straining to find a sliver of evidence to support his decision. *Godmar v. Hewlett-Packard Co.*, 631 F. App'x 397, 402–03 (6th Cir. 2015) ("When an administrator focuses on slivers of information that *could be* read to support a denial of coverage and ignores—without explanation—a wealth of evidence that directly contradicts its basis for denying coverage, the administrator's decision-making process is not deliberate or principled.") (cleaned up, italics in original). Jalali's injuries are the product of car accident in 2007 and 2015, and no reasonable person would suggest that her condition would change materially over an eight-month period in 2018.

Mr. Phillips reached two other conclusions, neither of which is supported by evidence. First, Mr. Phillips concluded, with a limited exception, that "Dr. Minard documented an essentially normal physical exam…" ECF 13-9, PID 4044.  That conclusion is belied by Dr. Minard's report itself.  And Mr. Phillips concluded, "And *it appears* likely that Jalali's documented abnormal gait was contributed to by her recent fall and knee hematoma." ECF 13-9, PID 4046 (emphasis added).  This is rank speculation unsupported by any evidence.[14]

Mr. Phillips rejected Mr. Atkinson's opinion on similarly trivial grounds.  Mr. Phillips, for example, wrote that "[w]hile Mr. Atkinson generalized comments on generic sedentary computer based occupations are acknowledged, his report provides no explanation as to why the multiple specific alternate sedentary occupations identified by the Benefits Center could not be performed while changing positions on a needed basis." ECF 13-9, PID 4048-4049.

This is incorrect on two levels.  First, Mr. Atkinson opined that the medical evidence "does not support the ability to return to work <u>in any capacity</u> on a full time basis." ECF 13-8, PID 3763 (emphasis added).  The inability to work "in any capacity" necessarily subsumes within it the subset of jobs that Unum claimed Jalali could do.  Second, Mr. Atkinson did specifically address the jobs Unum had identified in its original termination letter.  ECF 13-8, PID 3763 (referring to the jobs Unum had identified).

Finally, while Mr. Phillips acknowledged that Jalali had submitted her own affidavit, he did not consider it further.  This, too, was arbitrary.  *Rekstad v. U.S. Bancorp*, 451 F.3d 1114, 1120 (10th Cir. 2006) ("It was arbitrary for U.S. Bancorp to make its decision to deny disability benefits without it giving full and fair consideration to the affidavits submitted by Ms. Rekstad and her relatives.").  *See also Diaz v. Prudential Life Ins. Co. of America*, 499 F.3d 640, 645 (7th

---

[14] With respect to Jalali's gait, Mr. Secrest's evaluation indicated "substantial right sided antalgia with diminished stance time, diminished stride length, and diminished heel strike and push off."  ECF 13-8, PID 3578.

Cir. 2007) ("Diaz's testimony cannot be discounted simply because it is "self-serving" or because it is not "medical" or "neurological" evidence.").

"Plan administrators may not arbitrarily refuse to credit a claimant's reliable evidence." *Nord*, 538 U.S. at 823. Because he did, Mr. Phillips's decision was arbitrary and capricious.

### E. Unum's reliance on Dr. Lin's opinion was unreasonable.

Jalali, herself an MD, documented the errors and outright falsehoods that permeated Dr. Lin's report. Mr. Secrest noted the inconsistencies between the FCE and Dr. Lin's report. Dr. Minard explained that the test that Dr. Lin used to form the core of his opinion was outdated in the 1990s. And as his web site shows, *see infra* at pp. 21-22, Dr. Lin was unabashedly biased.

Mr. Phillips did not address any of the challenges to Dr. Lin's report. As noted above, he completely ignored Jalali's affidavit. Similarly, he did not mention Mr. Secrest's objections to Dr. Lin's findings, and he brushed off without comment Dr. Minard's observations about Waddell's signs. In addition, although Jalali submitted evidence Dr. Lin was biased, ECF 13-8, PID 3749, 3800-3804, Mr. Phillips did not address that evidence, either.

Mr. Phillips's refusal to address this evidence renders his opinion arbitrary and capricious. *Love v. Nat'l City Corp. Welfare Benefits Plan*, 574 F.3d 392, 397 (7th Cir. 2009) ("The Plan must provide a reasonable explanation for its determination and must address any reliable, contrary evidence presented by the claimant."); *White v. Eaton Corp. Short Term Disability Plan*, 308 F. App'x 713, 719 (4th Cir. 2009) ("In sum, the Plan failed to address evidence favorable to White thoughtfully and at length.") (citation and quotation omitted).

### III.     Unum's conflict of interest infected its decision-making.

As the insurer that both pays the claim and decides eligibility for benefits, Unum has an indisputable conflict of interest. *Haning v. Hartford Life & Accident Ins. Co*., 140 F. Supp. 3d

654, 674 (S.D. Ohio 2015).  How much weight the Court should apply to the conflict "depends

on the circumstances of each individual case ….  In order to diminish the Court's deferential

review, the plaintiff must demonstrate that a significant conflict was present, and the record must

contain significant evidence that the plan administrator was motivated by self-interest." *Chinn v.

AT&T Umbrella Ben. Plan No.1*, No. CIV. 12-88-GFVT, 2013 WL 5468501, at *5 (E.D. Ky.

Sept. 30, 2013) (cleaned up).

"[T]he court should adjust the level of skepticism with which it reviews

a potentially biased plan administrator's explanation for its decision in accordance with the facts

and circumstances of the case.  If those facts and circumstances indicate the conflict may have

tainted the entire administrative decisionmaking process, the court should review the

administrator's stated bases for its decision with enhanced skepticism." *Montour v. Hartford

Life & Acc. Ins. Co*., 588 F.3d 623, 631 (9th Cir. 2009) (citations omitted).

In this case, Jalali asserts that evidence of Unum's conflict pervades the record and the

Court, accordingly, should weigh the conflict heavily in assessing Unum's decision.  First,

Jalali's claim is an expensive one.  She receives $2400.32 per month, and the present value of

her claim (from the date benefits were most recently terminated to Jalali's 65th birthday) exceeds

$600,000.

The value of Jalali's claim alone suggests that a closer review of  Unum's decision is

required.  *Calvert*, 409 F.3d at 292 ("Considering Calvert's age, payment of this claim beyond

the 24 month limitation period would be expensive for Liberty.  As the district court noted, there

was an incentive for Liberty to terminate coverage or deny the claim.  Under such facts, the

potential for self-interested decision-making is evident.") (internal quotations and citation

omitted).

20

Second, consider the history of this claim – and how many times (four) Unum has attempted to terminate Jalali's claim or cut off her benefits.  Unum terminated Jalali's benefits for seven months in 2009, reinstating them only after Jalali retained counsel and appealed.  ECF 13-3, PID 1121.  Unum terminated Jalali's claim again in 2012, reinstating those benefits more than two years later only after this Court, in *Jalali I*, order it to do so.  Unum stopped Jalali's benefits a third time, in 2014.  Jalali's monthly benefit was not restored, in full, until this Court, in *Jalali II*, remanded her claim to Unum for further fact-finding.  This case challenges Unum's fourth termination of benefits.

There is also a whiff of retaliation in the timing of Unum's actions.  As *Jalali II* reflects, Unum originally did not claim an offset of Jalali's tort settlement; it asserted its claim only after this Court ruled, in *Jalali I*, that Unum had arbitrarily terminated Jalali's claim.  And Unum did not terminate Jalali's benefits this time around until after Jalali had filed *Jalali II*.  Perhaps the timing is coincidental.  But perhaps not.

Third, compare the two occasions on which Unum referred Jalali for an outside medical evaluation.  On the first occasion, Unum referred Jalali to Dr. Perkins, a respected, practicing physical medicine and rehabilitation physician in Columbus.  But Dr. Perkins opined that Jalali could not work.

On the second occasion, Unum referred Jalali to Dr. Lin.  Dr. Lin does not appear to be a practicing physician; rather, he holds himself out as specializing in independent medical reviews.  And he and his company (Disability & Occupational Consultants) are unabashedly anti-claimant.  His website proclaims, "[W]e view our role in the insurance marketplace <u>as your partner</u> in providing answers to the often complex medical-legal questions that dominate your claims management issues and <u>impact your bottom line</u>.  We regularly partner with … insurance

21

companies … to provide the medical expertise needed to effectively manage claims, <u>reduce costs</u> and avoid and <u>contain litigation</u>."  ECF 13-8, PID 3800 (emphasis added).  And on this occasion, Unum received what it expected, a report purporting to show that the claimant was not disabled.

That Unum selected a professional consultant who was all but guaranteed to find that Jalali was not disabled, instead of a practicing physician who would be expected to render a neutral opinion, is strong evidence that Unum's conflict of interest influenced the decision in this case.

Fourth, only Unum's conflict can explain the absurd justifications Unum has advanced for its decision-making, like rejecting the FCE and Dr. Minard's reports because they post-dated the termination of benefits; like concluding that the FCE found Jalali capable of sedentary work; like concluding that Dr. Minard's examination of Jalali was essentially normal; and like concluding that Dr. Lin's evaluation was dispositive, despite all of the evidence to the contrary.

These facts, taken together, compel the conclusion that Unum's conflict of interest rendered its decision arbitrary and capricious.  *Haning*, 140 F. Supp. 3d at 675 ("No single factor led the Court to this result. Rather, the cumulative effect of the foregoing factors, coupled with Hartford's inherent conflict of interest in this case, described above, leads the Court to conclude that Hartford's decision was not supported by a reasonable explanation and was therefore, arbitrary and capricious.") (citation and quotations omitted) .

Finally, the Second Circuit has held that Unum's overall claims processing history suggests a conflict that warrants close scrutiny of every claim:

> First Unum is no stranger to the courts, where its conduct has drawn biting criticism from judges.  A district court in Massachusetts wrote that "an examination of cases involving First Unum ... reveals a disturbing pattern of erroneous and arbitrary benefits denials, bad faith contract misinterpretations, and other unscrupulous tactics." *Radford Trust v. First Unum Life Ins. Co.,* 321 F.Supp.2d 226, 247 (D.Mass.2004), *rev'd on other grounds,* 491 F.3d 21, 25 (1st

22

Cir.2007). That court listed more than thirty cases in which First Unum's denials were found to be unlawful, including one decision in which First Unum's behavior was "culpably abusive." *Id.* at 247 n. 20. Also, First Unum's unscrupulous tactics have been the subject of news pieces on "60 Minutes" and "Dateline," that included harsh words for the company. *Id.* at 248–49.

First Unum has fared no better in legal academia. *See* John H. Langbein, *Trust Law as Regulatory Law: The Unum/Provident Scandal and Judicial Review of Benefit Denials Under ERISA,* 101 Nw. U.L.Rev. 1315 (2007). In light of First Unum's well-documented history of abusive tactics, and in the absence of any argument by First Unum showing that it has changed its internal procedures in response, we follow the Supreme Court's instruction and emphasize this factor here. Accordingly, <u>we find First Unum's history of deception and abusive tactics to be additional evidence that it was influenced by its conflict of interest</u> as both plan administrator and payor in denying McCauley's claim for benefits.

*McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 137 (2d Cir. 2008) (emphasis added).

**IV.    The appropriate remedies in this case are to restore Jalali's benefits, with interest, and to declare that she is disabled to age 65.**

The question of the proper remedy in an ERISA case is committed to the discretion of the Court. In this case, Jalali asks the Court to (a) direct Unum to reinstate her benefits, with interest, and (b) to determine her right to future benefits under the terms of the Unum policy.

As to the first, when a claimant's benefits are improperly terminated after previously having been awarded, the ordinary remedy is to reinstate the benefits. *See Wenner v. Sun Life Ins. Co. of Canada*, 482 F.3d 878, 883-84 (6th Cir. 2007) ("a plaintiff whose benefits have been terminated has, prior to the termination, a full expectation of continued disability payments until they are terminated by lawful procedures"); *Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 599 (6th Cir. 2001) (benefits terminated in violation of law have "never been properly revoked … and should continue until a decision regarding the potential revocation of … benefits has been properly determined"). *See also Wagner v. Am. United Life Ins. Co.*, 731 F. App'x 495, 498 (6th

23

Cir. 2018) ("[T]he usual remedy in cases like this is to reinstate benefits retroactively, and there is no reason to depart from that practice here.").

As the Court has noted, "plan administrators should not be given two bites at the proverbial apple where the claimant is clearly entitled to disability benefits. Instead, they need to properly and fairly evaluate the claim the first time around; otherwise they take the risk of not getting a second chance, except in cases where the adequacy of claimant's proof is reasonably debatable." *Haning*, 140 F. Supp. 3d 654 at 675–76 (S.D. Ohio 2015) (quotations and citations omitted, punctuation cleaned up).

Jalali also requests that the Court award interest at the Ohio statutory rate. *Mulder v. Loc. 705, Int'l Bhd. of Teamsters, Pension Fund*, 794 F. App'x 451, 455 (6th Cir. 2019).

Finally, the Court has authority, under ERISA, "to clarify [Jalali's] rights to future benefits under the terms of the plan," 29 U.S.C. §1132(a)(1)(B). Jalali asks the Court to exercise that authority in this case and to enter an order finding that Jalali is disabled and will remain disabled under the plan until she reaches age 65.[15] This request is not unprecedented:

> The Court is permitted, in accordance with 29 U.S.C. § 1132(a)(1)(B), to "clarify [Plaintiff's] rights to future benefits under the terms of the plan." Having been satisfied that Plaintiff has proven her inability to discharge the material duties of her sedentary position at Boeing and established beyond question the lifelong and steadily deteriorating nature of her medical condition, the Court clarifies Plaintiff's rights to future Plan benefits by finding that she is entitled to continuing LTD benefits under the "any reasonable occupation" section of the Plan.
>
> Subject to the terms and conditions of the Plan, Defendant is directed to pay her LTD claim to the policy's maximum benefit duration <u>absent a showing of improvement in her medical condition such that a reasonable physician would conclude that she could work</u> in "any gainful activity for which [she is], or may reasonably become, fitted by education, training, or experience and which results in, or can be expected to result in, an income of more than 60% of [her] adjusted predisability earnings." (AR 8754.) <u>Unless Defendant can establish that Plaintiff is capable of performing such work productively</u>, full-time, and without undue

---

[15] The Unum policy provides that benefit payments will terminate when Jalali reaches age 65. ECF 13-1, PID 142.

disruptions and/or absences due to her MS and its related symptoms, <u>she is to continue to receive LTD benefits to the Plas's maximum duration</u>.

*Gorena v. Aetna Life Ins. Co.*, No. C17-532 MJP, 2018 WL 3008873, at *7 (W.D. Wash. June 15, 2018) (emphasis added).  *See also Foust v. Lincoln Nat'l Life Ins. Co.*, 416 F. Supp. 3d 1319, 1333 (D. Utah 2019) ("The court also concludes that it would be unreasonable for Lincoln to deny further LTD benefits on any ground.  Mr. Foust's request for further LTD benefits is accordingly granted in full."); *Medefesser v. Metro. Life Ins. Co.*, No. 6:18-CV-00041-MK, 2019 WL 6481794, at *12 (D. Or. Sept. 5, 2019), report and recommendation adopted, No. 6:18-CV-00041-MK, 2019 WL 6467818 (D. Or. Dec. 2, 2019) ("Subject to the terms and conditions of Plaintiff's LTD benefit plan, the Court should direct Metlife to pay her LTD claim to the policy's maximum benefit duration absent a showing of improvement in her medical condition….").

Unum has terminated Jalali's benefit four times in the last 10 years.  The evidence is clear that she is disabled and that her medical condition is unlikely ever to improve.  To minimize the chance that Unum will yet-again terminate Jalali's claim, and to guard against the continuing influence of Unum's conflict of interest, the Court should enter an order compelling Unum to prove, by reasonable and objective evidence, that Jalali's medical condition has improved, as a condition precedent to once again terminating her claim.

## V. Jalali requests oral argument.

As provided in S.D. Ohio L. R. 7.1(b)(2), Jalali requests oral argument.  This case presents several issues that merit examination through argument: the job accommodation issue, Dr. Lin's bias, Jalali's affidavit, and the future benefits remedy, to name four.  The Court and the parties would benefit from a further exploration of these issues.

**CONCLUSION**

The evidence establishes that Jalali remains disabled and unable to engage in gainful employment. The Court should grant Jalali's Motion for Judgment on the Administrative Record and should enter an order directing Unum to reinstate Jalali's benefits retroactively, plus interest, and to continue to pay her claim to age 65, absent reasonable and objective evidence that Jalali's medical condition has improved.

Respectfully submitted,

_____/s/ Tony C. Merry_____
Tony C. Merry          (0042471)
Trial Attorney
Law Offices of Tony C. Merry, LLC
7100 N. High Street, Suite 302
Worthington, Ohio 43085
(614) 372-7114
(614) 505-6109 [fax]
tmerry@tmerrylaw.com
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing was filed via the Court's Electronic Filing System and intended to be served upon all counsel of record via the Court's electronic mail system this 17th day of May 2021.

_____/s/ Tony C. Merry_____
Tony C. Merry          (0042471)