IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SEPANTA JALALI, | ) | CASE NO.: 2:20-cv-5071 |
| | ) | |
| Plaintiff, | ) | JUDGE MARBLEY |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DEAVERS |
| | ) | |
| UNUM LIFE INSURANCE COMPANY | ) | **DEFENDANT'S MOTION FOR** |
| OF AMERICA, | ) | **JUDGMENT ON THE** |
| | ) | **ADMINISTRATIVE RECORD AND** |
| Defendant. | ) | **BRIEF IN OPPOSITION TO** |
| | ) | **PLAINTIFF'S MOTION FOR** |
| | ) | **JUDGMENT ON THE** |
| | ) | **ADMINISTRATIVE RECORD** |

Consistent with this Court's June 8, 2021 Order (Doc. 18), Defendant Unum Life Insurance Company of America ("Unum") asks this Court to uphold Unum's administrative decision by way of this motion for judgment on the administrative record. In her corresponding motion (Doc. 16), Plaintiff Sepanta Jalali ("Plaintiff") alleges that Unum acted improperly when it discontinued her long-term disability benefits. Plaintiff's claim arises under Group Policy No. 503126 (the "Policy"), which Unum issued to Trinity Health, Plaintiff's former employer. Because the Policy is part of an employee welfare benefit plan, the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, governs this denial-of-benefits claim.

As explained more fully in the attached Memorandum, Plaintiff's claim is meritless. As such, the terms of the Policy foreclose Plaintiff's claim. Because the record evidence confirms that Unum acted reasonably in denying benefits, Unum asks the Court to grant judgment in its favor on the administrative record, deny Plaintiff's motion for judgment on the administrative record, and dismiss Plaintiff's Complaint against it, with prejudice.

Respectfully submitted,

s/ Olivia L. Southam _____
Brett K. Bacon (0022826)
bbacon@frantzward.com
Olivia Lin Southam (0085476)
osoutham@frantzward.com
FRANTZ WARD LLP
200 Public Square, Suite 3000
Cleveland, Ohio 44114
(216) 515-1660
(216) 515-1650 (facsimile)

*Counsel for Defendant*
*Unum Life Insurance Company of America*

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND.......................................................... 2

   A.  The Relevant Provisions of the Policy. ...................................................................... 2

   B.  The History of Plaintiff's Claim. ................................................................................. 2

      1.  Unum Approves Plaintiff's April 2009 Disability Claim.............................. 3

      2.  Unum Discontinues Plaintiff's Benefits in February 2012 After
         Concluding She Chose Not to Work Part-Time, and Plaintiff Files *Jalali I.* ........... 5

      3.  Unum Reopens Plaintiff's Claim in April 2014, and Plaintiff Files *Jalali II* as
         Benefits Continue.......................................................................................... 6

      4.  Plaintiff's Treating Physicians (Dr. Natalie and Dr. Barfield) Provide No
         Restrictions or Limitations From Full-Time Sedentary Work................................... 6

      5.  Unum's Clinical and Physician Consultants Find No Restrictions or
         Limitations From Full-Time Sedentary Work. ......................................................... 7

      6.  IME Physician Dr. Lin Concludes Plaintiff Can Perform Full-Time
         Sedentary Work, and Unum Identifies Alternative Gainful Occupations. ............... 9

      7.  Unum Discontinues Benefits in February 2018 and Plaintiff Appeals.................... 10

      8.  Unum Conducts a Vocational Review on Appeal. .................................................. 10

      9.  Unum Conducts a Clinical Review on Appeal. ....................................................... 11

      10.  Unum Upholds the Decision to Deny Benefits........................................................ 14

LAW AND ARGUMENT ..................................................................................................... 14

   A.  Legal Standard. ........................................................................................................... 14

   B.  Unum Did Not Act Arbitrarily or Capriciously in Denying Plaintiff Benefits. ................. 16

   C.  Plaintiff's Arguments for Reversing Unum's Decision are Meritless. ............................. 17

      1.  The Record Supports Improvement in Plaintiff's Condition and a
         Rational Basis for Discontinuing Benefits.............................................................. 17

      2.  The Record Confirms that Unum Properly Considered the FCE
         Report Plaintiff Submitted on Appeal..................................................................... 19

      3.  Unum Did Not Improperly Import an "Accommodation Provision"
         into the Policy. ......................................................................................................... 21

      4.  The Record Confirms that Unum Properly Considered the IME and
         Vocational Reports Plaintiff Submitted on Appeal. ............................................... 24

      5.  Unum Reasonably Relied on the Report of its IME Physician, Dr. Lin.................. 26

   D.  Plaintiff Cannot Support Any Claim That a Structural Conflict Biased
      Unum's Decision on Her Claim. .................................................................................. 28

   E.  There is No Sixth Circuit Authority for an Order Importing a New
      Condition Precedent into the Policy for Purposes of Future Disability. ......................... 32

   F.  Oral Argument............................................................................................................. 34

CONCLUSION........................................................................................................................ 34

i

# TABLE OF AUTHORITIES

**Cases**

*Brooking v. Hartford Life & Acc. Ins. Co.*, 167 F. App'x 544 (6th Cir. 2006) ........................... 21

*Bustetter v. Standard Ins. Co.*, No. 18-1-DLB-EBA, 2021 U.S. Dist. LEXIS 59489,
(E.D. Ky. Mar. 29, 2021) .......................................................................................... 23

*Calvert v. Firstar Fin., Inc.*, 409 F.3d 286 (6th Cir. 2005) ................................................ 29

*Canter v. Ankermes Blue Care Elect Preferred Provider Plan*, 328 F.R.D. 485
(S.D. Ohio 2018) ...................................................................................................... 28

*Carr v. Reliance Std. Life Ins. Co.*, 363 F. 3d 604 n.2 (6th Cir. 2004) ......................................... 31

*Cleveland v. Policy Management Systems Corporation*, 526 U.S. 795 (1999) ...................... 3, 23

*Cochran v. Trans-General Life Ins. Co.*, 12 F. App'x 277 (6th Cir. 2001) ................................... 29

*Collins v. Unum Life Ins. Co. of Am.*, 682 F. App'x 381 (6th Cir. 2017) ....................... 15, 28, 30

*Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157 (6th Cir. 2007) ............................................... 33

*Daniel v. UnumProvident Corp.*, No. CV-04-1073, 2010 U.S. Dist. LEXIS
115171 n.10 (E.D.N.Y. Oct. 7, 2010) ......................................................................... 31

*Evans v. Metro. Life Ins. Co.*, 190 F. App'x 429 (6th Cir. 2006) ............................................. 23

*Farr v. Hartford*, 564 F. Supp. 2d 1255, n.4 (D. Kan. 2008) ....................................................... 17

*Foust v. Lincoln Nat'l Life Ins. Co.*, 416 F. Supp. 3d 1319 (D. Utah 2019) ............................... 33

*Geiger v. Pfizer, Inc.*, 271 F.R.D. 577 (S.D. Ohio 2010) .............................................................. 28

*Godmar v. H-P Co.*, 631 F. App'x 397 (6th Cir. 2015) ...................................................... 16, 18

*Hagopian v. Johnson Financial Group*, No. 09-C-926, 2010 U.S. Dist.
LEXIS 101984 (E.D. Wisc. Sept. 23, 2010) ............................................................... 31

*Haning v. Hartford Life & Accident Ins. Co.*, 140 F. Supp. 3d 654
(S.D. Ohio 2015) ...................................................................................................... 32

*Hinchey v. First Unum Life Ins. Co.*, No. 17-cv-8034, 2020 U.S. Dist.
LEXIS 49703 (S.D.N.Y. Mar. 20, 2020) ..................................................................... 31

*Huffaker v. Metro. Life Ins. Co.*, 271 F. App'x 493 (6th Cir. 2008) ......................................... 21

*Jalali v. Unum Life Ins. Co. of Am. (Jalali I)*, No. 2:12-cv-828, 2014 U.S. Dist.
LEXIS 39606 (S.D. Ohio Mar. 24, 2014) ......................................................... 5, 6, 16, 18, 29

*Jalali v. Unum Life Ins. Co. of Am. (Jalali II)*, No. 2:16-cv-512, 2018 U.S. Dist.
LEXIS 159015 (Sep. 18, 2018) ........................................................................... 6, 29

*Jeffries v. Prudential Ins. Co.*, No. C-1-01-680, 2003 U.S. Dist.
LEXIS 27365 (S.D. Ohio Dec. 4, 2003) ................................................................. 33, 34

*Kramer v. Paul Revere Life Insurance Company*, 571 F.3d 499 (6th Cir. 2009) ........................ 17

*Marais v. Chase Home Fin., LLC*, 24 F. Supp. 3d 712 n.8 (S.D. Ohio 2014) ............................. 33

*McCauley v. First Unum Life Insurance Company*, 551 F.3d 126 (2d Cir. 2008) ..................... 31

*McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059 (6th Cir. 2014) ................................... 15

*McDonald v. W.-Southern Life Ins. Co.*, 347 F.3d 161 (6th Cir. 2003) ................................ 15, 17

*McLaren v. Tr. of the Grp.*, No. 1:16-cv-1164, 2017 U.S. Dist.
LEXIS 164944 (S.D. Ohio Oct. 4, 2017) ..................................................................... 28

*Morris v. Am. Elec. Power Long-Term Disability Plan*, 399 F.
App'x 978 (6th Cir. 2010) ......................................................................................... 17

*Osborn v. Principal Life Ins. Co.*, No. 2:17-cv-329, 2017 U.S. Dist.
LEXIS 166877 (S.D. Ohio Oct. 10, 2017) ............................................................... 33, 34

*Saffle v. Sierra Pacific Power Co. Bargaining Unit LTD Income Plan*,
    85 F.3d 455 (9th Cir. 1996) ........................................................................... 22

*Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299 (6th Cir. 2010) ...................... 15, 16, 28

*Shaw v. AT&T Umbrella Benefit Plan No. 1*, 795 F.3d 538 (6th Cir. 2015) ............................... 24

*Shields v. Reader's Digest Ass'n, Inc.*, 331 F.3d 536 (6th Cir. 2003) ......................... 15

*Tebo v. Sedgwick Claims Mgmt. Servs.*, 848 F. Supp. 2d 39 (D. Mass. 2012) ........................... 22

*Tenney v. BankAmerica Corp. Employee Benefits Administrative Committee*,
    No. 98-16200, 1999 U.S. App. LEXIS 16024 (9th Cir. July 13, 1999) ................................. 22

*Thompson v. Transam Trucking, Inc.*, 750 F. Supp. 2d 871 (S.D. Ohio 2010) .......................... 29

*Truitt v. Unum Life Ins. Co. of Am.*, 729 F.3d 497 (5th Cir. 2013)............................................... 31

**Statutes**

29 U.S.C. §§ 1001–1461 ............................................................................................................ 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SEPANTA JALALI, | ) | CASE NO.: 2:20-cv-5071 |
| | ) | |
| Plaintiff, | ) | JUDGE MARBLEY |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DEAVERS |
| | ) | |
| UNUM LIFE INSURANCE COMPANY | ) | **DEFENDANT'S MEMORANDUM** |
| OF AMERICA, | ) | **IN SUPPORT OF ITS MOTION FOR** |
| | ) | **JUDGMENT ON THE** |
| Defendant. | ) | **ADMINISTRATIVE RECORD AND** |
| | ) | **BRIEF IN OPPOSITION TO** |
| | ) | **PLAINTIFF'S MOTION FOR** |
| | ) | **JUDGMENT ON THE** |
| | ) | **ADMINISTRATIVE RECORD** |

## INTRODUCTION

By way of this lawsuit, Plaintiff Sepanta Jalali challenges the February 14, 2018 decision of Unum Life Insurance Company of America ("Unum") to discontinue her long-term disability benefits under Group Policy No. 503126 (the "Policy," Record[1] at Page ID# 138–78). Unum issued the Policy to Plaintiff's former employer, Trinity Health. Because Trinity Health offered the Policy as part of an employee welfare benefit plan, the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, governs this denial-of-benefits claim.

In asking this Court to reverse Unum's decision, Plaintiff relies heavily on the fact that 9 years ago, Unum discontinued her benefits because it determined that she had "chosen not to work on a part-time basis in a gainful occupation." (Record at Page ID# 2420–25.) The Court eventually reinstated her benefits, noting in part that Plaintiff's treating physician at the time, as well as a June 2011 report from an independent medical examination ("IME") requested by Unum, supported restrictions from part-time work. Although Plaintiff argues that her condition

---

[1] On March 3, 2021, Unum filed the administrative record under seal.

1

continued to deteriorate, the clinical record looks very different today than it did a decade ago. None of Plaintiff's treating physicians now support her disability claim, and her primary treating provider has released her to full-time, sedentary work. Likewise, the report from a January 2018 IME requested by Unum concluded that Plaintiff has full-time, sedentary capacity.

On those facts, the terms of the Policy foreclose Plaintiff's claim. Because the record evidence does not support continuing benefits, Unum acted neither arbitrarily nor capriciously in denying Plaintiff's claim. Unum respectfully requests that the Court enter judgment on the administrative record in Unum's favor, deny Plaintiff's motion for judgment on the record, and dismiss Plaintiff's Complaint, with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Relevant Provisions of the Policy.

Initially, the Policy defines disability as when a claimant cannot perform the material and substantial duties of his or her "regular occupation" due to sickness or injury, and experiences a 20% or more loss in indexed monthly earnings as a result. (Record at Page ID# 153.) After 24 months of payments, the definition of disability changes to when a claimant cannot perform the duties of "any gainful[2] occupation" for which he or she is "reasonably fitted by education, training or experience." (*Id.*) The parties agree that the Policy gives Unum "discretionary authority to make benefit determinations." (*Id.* at Page ID# 175.)

### B.    The History of Plaintiff's Claim.

Although Plaintiff's motion contains her own statement of the facts, conspicuously absent from the narrative is any meaningful discussion of the fact that none of her multiple treating

---

[2] A "gainful" occupation means an occupation that is or can be expected to provide an income within 12 months of return to work that exceeds 80% of indexed monthly earnings, if working, or 60% of indexed monthly earnings, if not working. (Record at Page ID# 165.)

2

physicians support her disability claim. Instead, Plaintiff cites evidence dating back several years—to periods when she received disability benefits—or reports from consultants secured during her recent administrative appeal that Unum addressed in upholding its decision to deny benefits. As set forth below, the record confirms that Plaintiff's own treating physicians, an IME physician, and Unum's in-house physician consultants considered her able to perform full-time sedentary work, and Unum's vocational specialists identified alternate gainful occupations consistent with her capabilities and experience. At minimum, this record evidence supports a reasonable basis on which to discontinue benefits.

   1.   **Unum Approves Plaintiff's April 2009 Disability Claim.**

Plaintiff filed her claim for disability benefits in April 2009, explaining that a herniated lumbar disc prevented her from performing her duties as a first-year resident physician with Trinity Health in the field of family practice. (Record at Page ID# 117–18, 2136.) Plaintiff informed Unum that she had a prior herniated disc from a January 2007 car accident, but that her leg and back pain intensified in June 2008 when she began the 80-hour, physically demanding work week required of a full-time resident. (*Id.* at Page ID# 180–82, 1330.) Ultimately, she took medical leave in November 2008, six months into her first year of residency. (*Id.* at Page ID# 180, 2136.) By letter dated June 15, 2009, Unum approved Plaintiff's claim, but noted that she would need to demonstrate continued eligibility for future benefits. (*Id.* at Page ID# 383–86.)

While on claim in the summer of 2009, Plaintiff began part-time employment with Columbus State Community College as a physiology professor. (*Id.* at Page ID# 1326–27.) During an October 21, 2010 interview with Unum personal visit consultant Glen Flagler, Plaintiff reported that she taught typically twice a week, for about 5 hours total. (*Id.*) She also disclosed a pending lawsuit related to the 2007 car accident. (*Id.* at Page ID# 1333.)

3

On June 10, 2011, Unum asked Plaintiff to participate in an IME conducted by physiatrist Robert H. Perkins, M.D., Board-certified in Physical Medicine & Rehabilitation. (*Id.* at Page ID# 2135–2143.) In the resulting report, Dr. Perkins noted that Plaintiff primarily treated with physiatrist Lewis Seeder, M.D., for her pain. (*Id.*at Page ID# 2135–36.) After his examination, Dr. Perkins concluded that Plaintiff could perform sedentary work, but "currently . . . would have problems with a 40-hour work week." (*Id.* at Page ID# 2141.) Dr. Perkins felt that, with "a conditioning program and therapy," Plaintiff could reach "up to probably 20 hours a week of sedentary type duty initially" and if able to tolerate that, "may even be able to be increased beyond the 20 hours a week." (*Id.* at Page ID# 2143.) In sum, he concluded: "I see her initially being able to do 4–5 hour workdays where she is currently doing teaching and working this up to 4–5 days a week." (*Id.*)

After reviewing Dr. Perkins' report, Unum continued to approve benefits, but informed Plaintiff on June 23, 2011, that because she had received 24 months of benefits, further benefits would require her to show an inability to perform the duties of "any gainful occupation," rather than her prior occupation as a resident physician. (*Id.* at Page ID# 2157.) Unum also noted that, based on the medical information, Plaintiff had the capacity to work 20 hours a week in a sedentary occupation. (*Id.*) Because Plaintiff was working, Unum calculated her gainful wage as $18.85, and identified 3 sedentary occupations that would qualify based on her skills (Healthcare Consultant, Social Medical Researcher, and Cytotechnologist). (*Id.*) Further, Unum explained that payments would end if she could "work in any gainful occupation on a part-time basis but . . . [chose] not to." (*Id.* at Page ID# 2158–59.) Under the Policy, working on a "part-time basis" is not defined by reference to any specific number of hours each week, but means "the ability to work and earn between 20% and 80% of your indexed monthly earnings." (*Id.* at Page ID# 167.)

4

2.      **Unum Discontinues Plaintiff's Benefits in February 2012 After Concluding She Chose Not to Work Part-Time, and Plaintiff Files *Jalali I*.**

On January 2, 2012, Plaintiff informed Unum that she would not be teaching the next academic quarter because she had decided to take some courses to identify a new career path. (Record at Page ID # 2293.) On January 26, 2012, Dr. Seeder continued to provide restrictions in his Attending Physician Statement. (*Id.* at Page ID# 2374–75.) After a February 13, 2012 field visit, Mr. Flagler noted that Plaintiff "made a voluntary choice to cease teaching . . . so that she could focus her efforts on earning her MBA." (*Id.* at Page ID# 2385.) Plaintiff likewise reported a settlement related to her 2007 car accident, without providing the terms. (*Id.* at Page ID# 2388.)

Unum informed Plaintiff on February 29, 2012, that it could not continue benefits because she had "chosen not to work on a part-time basis in a gainful occupation." (*Id.* at Page ID# 2420–25.) With the assistance of current counsel, Plaintiff appealed (*id.* at Page ID# 2454–60), and Unum upheld its decision by letter dated July 2, 2012 (*id.* at Page ID# 2485–90). Specifically, Unum noted that Plaintiff's prior teaching position earned her more than 20% of her indexed monthly earnings, which constituted the ability to work "part-time" under the Policy, and that her choice to discontinue teaching precluded further benefits. (*Id.* at Page ID# 2486.)

As this Court knows, Plaintiff filed suit after Unum discontinued benefits in 2012, and the Court reversed the decision, holding that, although "the driving force behind [Unum's] reevaluation of Plaintiff's benefits was her decision not to work 5 hours a week as an assistant professor," that job did not constitute "a qualifying gainful occupation." *Jalali v. Unum Life Ins. Co. of Am.* (*Jalali I*), No. 2:12-cv-828, 2014 U.S. Dist. LEXIS 39606, at *15 (S.D. Ohio Mar. 24, 2014). The Court also noted that the clinical record weighed in favor of a finding that Plaintiff could not work a part-time sedentary job because Plaintiff's treating physician, Dr. Seeder,

5

continued to identify restrictions, and Dr. Perkins' IME report did not conclusively establish an existing ability to work 20 hours a week in a sedentary occupation. *Id.* at \*4–5.

### 3. Unum Reopens Plaintiff's Claim in April 2014, and Plaintiff Files *Jalali II* as Benefits Continue.

As a result of *Jalali I*, Unum reopened Plaintiff's claim and continued benefits in April 2014. (Record at Page ID# 2509.) After reinstating the claim, Unum received the settlement information related to Plaintiff's 2007 car accident, and reduced Plaintiff's monthly benefit because the Policy identified amounts "you receive from a third party (after subtracting attorney's fees) by judgment, settlement or otherwise" as a deductible source of income. (*Id.* at Page ID# 155–56, 2744–46.) Two years later, on June 8, 2016, Plaintiff filed suit on the narrow issue of whether Unum could offset her benefits. *Jalali v. Unum Life Ins. Co. of Am.* (*Jalali II*), No. 2:16-cv-512, 2018 U.S. Dist. LEXIS 159015 (Sep. 18, 2018). The Court required that Unum first determine whether Plaintiff had been "made whole," *id.* at \*20, and the parties eventually reached a settlement, resolving the issue. (*Jalali II*, at Doc. 42.)

### 4. Plaintiff's Treating Physicians (Dr. Natalie and Dr. Barfield) Provide No Restrictions or Limitations From Full-Time Sedentary Work.

As *Jalali II* proceeded, Plaintiff continued to receive benefits. In its ongoing review, Unum received a Disability Status Update from Plaintiff dated March 10, 2017, which noted she had two daughters born in 2013 and 2015, and identified physiatrist James Natalie, M.D., as her treating provider after Dr. Seeder's retirement. (Record at Page ID# 3036–38, 3239.)

Over the course of its claim review, Unum received a statement from Dr. Natalie dated May 31, 2017, stating that Plaintiff could perform full-time sedentary work. (*Id.* at Page ID# 3090–92.) In her motion, Plaintiff describes this statement as comprised of a "check mark" that "suggested" Plaintiff could work in a sedentary position (Pl's Motion at Page ID# 4250), but Dr.

Natalie plainly marked "yes" in response to the question of whether Plaintiff could perform sedentary demands on a full-time basis, and signed and dated his statement (Record at 3090–92). Importantly, Plaintiff offers no record statement from Dr. Natalie either negating that statement or otherwise supporting any restrictions or limitations.

After learning that Plaintiff also treated with neurologist Jason Barfield, M.D., for migraines following a second car accident in 2015, Unum requested records from Dr. Barfield. (*Id.* at Page ID# 3242, 3250–52.) The records revealed that Plaintiff received Botox injections for her headaches every few months from December 2015 through April 2017. (*Id.* at Page ID# 3299.) Notably, after an April 6, 2017 office visit, Plaintiff "reported a significant reduction in her headache frequency, severity, and duration since initiating Botox," and did not schedule any further visits for several months. (*Id.* at Page ID# 3255, 3279, 3309.)

In February 2018, Unum reached out by phone to both Dr. Barfield and Dr. Natalie, requesting any updates with respect to office visits and any restrictions or limitations. (*Id.* at Page ID# 3464–65.) Dr. Barfield's office responded on February 5, 2018, stating that Plaintiff received Botox injections every 10 weeks, but that Dr. Barfield was not providing any restrictions or limitations. (*Id.* at Page ID# 3466.) The same day, Dr. Natalie's office called to inform Unum that Dr. Natalie stated there was no change from his prior statement that Plaintiff could perform sedentary work, and that Dr. Natalie would see Plaintiff in March 2018 for an epidural steroid injection. (*Id.* at Page ID# 3465, 3467.)

**5.** **Unum's Clinical and Physician Consultants Find No Restrictions or Limitations From Full-Time Sedentary Work.**

As Unum continued to review the claim, it referred the file to clinical consultant Christa Young, R.N., for review. (Record at Page ID# 3325–27.) Ms. Young concluded in a September 26, 2017 report that the record did not substantiate "ongoing symptoms that would continue to

7

impact sustained functional capacity," noting that Plaintiff's migraines appeared controlled, and Plaintiff's primary treating provider, Dr. Natalie, released her to full-time sedentary work. (*Id.*)

Unum likewise referred the file to physician consultant William B. Fox, M.D., Board-certified in Internal Medicine. (*Id.* at Page ID# 3331–35.) In an October 11, 2017 report, Dr. Fox concluded that the record did not support restrictions or limitations from full-time, sedentary work. (*Id.* at Page ID# 3335.) At the outset of his report, Dr. Fox noted that, although Plaintiff's former physiatrist, Dr. Seeder, supported restrictions and limitations, her current physiatrist, Dr. Natalie, "more recently released [Plaintiff] to perform sedentary-type occupational duties." (*Id.* at Page ID# 3332.) In concluding that Plaintiff could perform full-time, sedentary work, Dr. Fox stated that diagnostic images from 2015 "do not support the presence of a severe spine condition and a loss of exertional work capacity," and that while the imaging suggested the potential for neural compromise and degenerative changes typical with aging, "recent examinations have not documented gait, sensory, reflex or motor deficits." (*Id.* at Page ID# 3274–75, 3333.) Dr. Natalie found "[n]othing concerning" in Plaintiff's knee MRI from 2015, and although Plaintiff reported intermittent knee pain, she did not opt for knee injections or orthopedic follow-up, and apparently did not require ambulatory assistance. (*Id.* at Page ID# 3101, 3334, 3665.)

Dr. Fox noted that Plaintiff consistently appeared in no acute distress from 2015 forward in her office visits with Dr. Barfield and Dr. Natalie; that Plaintiff did not participate in any recommended physical therapy or comprehensive pain management program; and that she worked primarily as a home-maker, caring for her 4-year old and 2-year old daughters, while also gardening, painting, and exercising on her recumbent bike and inversion table. (*Id.* at Page ID# 3333.) Further, Dr. Fox noted that none of Plaintiff's treating physicians identified restrictions that would preclude sedentary work, and that Dr. Natalie recommended that Plaintiff

progressively increase her level of activity. (*Id.* at Page ID# 3333–34.) In sum, Dr. Fox concluded that Plaintiff could perform full-time sedentary work. (*Id.* at Page ID# 3334–35.)

>    **6.    IME Physician Dr. Lin Concludes Plaintiff Can Perform Full-Time Sedentary Work, and Unum Identifies Alternative Gainful Occupations.**

After Dr. Fox completed his review of the medical record, Unum requested that Plaintiff participate in an IME with physiatrist Eugene Lin, M.D., Board-certified in Physical Medicine and Rehabilitation, which took place on January 2, 2018. (*Id.* at Page ID# 3443–48.) After reviewing the clinical record and conducting a physical exam, Dr. Lin completed a January 10, 2018 report, which concluded that "multiple physical findings show no radicular symptoms and negative lumbar provocative tests," found "no instability in the knee," and noted that Plaintiff's "headaches are managed with injections" and "cervical conditions are managed with medications." (*Id.* at Page ID# 3447–48.) Dr. Lin likewise noted that, although the MRI findings would contribute to decreased range of motion, "the lack of objectively clinically verifiable consistent radicular complaints would indicate that the claimant would be able to work within the above stated [sedentary] restrictions." (*Id.* at Page ID# 3447–48.) In short, Dr. Lin likewise determined that Plaintiff could perform full-time sedentary work. (*Id.*)

Citing the lack of any restrictions that would prevent Plaintiff from performing full-time, sedentary work, Unum referred the file to vocational rehabilitation consultant Beth Darman, M.Ed., CRC, to identify any alternative gainful occupations. (*Id.* at Page ID# 3468.) Ms. Darman noted that the occupations of Cardiac Monitor Technician, Director Volunteer Services, and Patient Relations Representative all fell within sedentary restrictions, and Plaintiff's MBA degree would provide additional skills qualifying her for other sedentary positions such as Hospital Admitting Director, Clinic Operations Director, and Clinic Manager. (*Id.* at Page ID#

3277, 3469.) Ms. Darman also confirmed that these occupations met the gainful wage requirement and existed in Plaintiff's local labor market. (*Id.* at Page ID# 3468–69.)

### 7.    Unum Discontinues Benefits in February 2018 and Plaintiff Appeals.

By letter dated February 14, 2018, Unum discontinued Plaintiff's disability benefits because it determined that she could perform the duties of other gainful occupations. (*Id.* at Page ID# 3482–89.) Specifically, Unum noted that Plaintiff's neurologist (Dr. Barfield), Plaintiff's physiatrist (Dr. Natalie), Unum's physician consultant (Dr. Fox), and an IME physician (Dr. Lin) each concluded that Plaintiff had no restrictions or limitations from performing full-time, sedentary work. (*Id.* at Page ID# 3483–84.) Unum further pointed out that its vocational consultant had identified at least 6 gainful occupations within her sedentary restrictions that each exceeded her non-working gainful wage of $15.87 per hour. (*See id.* at Page ID# 165, 3483–85.)

Plaintiff appealed with the assistance of counsel. (*Id.* at Page ID# 3554–49, 3741–804.) Ultimately, Plaintiff's counsel submitted several documents, including a July 10, 2018 functional capacity evaluation ("FCE") and follow-up statement by Scott Secrest, MS, OT/L; an October 4, 2018 vocational report by Joseph Atkinson, MS, CRC; an October 4, 2018 IME by physiatrist Alexander Minard, M.D.; an October 17, 2018 affidavit executed by Plaintiff; and records from family practice physician Steven Leonard, M.D., and orthopedic surgeon Joseph F. Wilcox, M.D. (*Id.* at Page ID#  at 3554–3746, 3828–30.) Notably absent from these documents is any statement from Plaintiff's treating physicians—Dr. Natalie, Dr. Barfield, Dr. Leonard, or Dr. Wilcox— identifying restrictions that would preclude her from performing a sedentary occupation.

### 8.    Unum Conducts a Vocational Review on Appeal.

In response to Mr. Atkinson's vocational report, which concluded that Plaintiff "is unable to return to work at the gainful wage in any occupation" (Record at Page ID# 3763), Unum asked

vocational rehabilitation consultant Kelly Marsiano, M.Ed., CRC, whether the information would change Unum's prior conclusion that alternative gainful occupations existed. (*Id.* at Page ID# 3837–39.) Although Plaintiff suggests otherwise, Ms. Marsiano pointed out that Mr. Atkinson did not disagree with the vocational options "from a transferable skills perspective," but based his conclusion on the FCE and IME reports submitted by Plaintiff's counsel, which concluded that Plaintiff could not work a full-time, sedentary position. (*Id.* at Page ID# 3838.) By contrast, Unum's determination that alternative gainful occupations existed relied on the ample record support for Plaintiff's full-time sedentary work capacity, including the opinions of Plaintiff's own treating physicians. Further, in response to Mr. Atkinson's conclusion that, "per the FCE," Plaintiff would need to regularly alternate sitting, standing, and walking, Ms. Marsiano noted that a common option for the identified occupations—a sit/stand desk—would allow Plaintiff to avoid either sitting or standing for protracted periods of time. (*Id.* at Page ID# 3839.) In sum, Ms. Marsiano stated that the new report from Mr. Atkinson did not change Unum's conclusion that alternative gainful occupations existed in Plaintiff's labor market. (*Id.*)

**9. <u>Unum Conducts a Clinical Review on Appeal.</u>**

On appeal, Unum likewise requested another review of the clinical record. On November 9, 2018, physician consultant Scott B. Norris, M.D., Board-certified in Family and Occupational Medicine, concluded that the record did not support restrictions or limitations. (*Id.* at Page ID# 4003–09.) Plaintiff argues that Unum denied benefits "[b]ased largely on Dr. Lin's opinion" (Pl's Motion at Page ID# 4253), but the report completed by Dr. Norris reveals that—although Unum certainly considered Dr. Lin's expert opinion after an IME—Unum likewise relied on the opinions of Plaintiff's treating neurologist and physiatrist, related office notes, and diagnostic imaging. (Record at Page ID# 4005–06.)

11

With respect to Mr. Secrest's FCE and Dr. Minard's IME, both of which concluded that Plaintiff could not perform sedentary work, Dr. Norris did not find them persuasive. As an initial matter, Dr. Norris noted that the FCE and IME had less clinical weight because the examinations, which took place several months after Unum closed the claim, were inconsistent with the conclusions of both Dr. Lin's IME report as well as the opinions of Plaintiff's treating providers. (*Id.* at Page ID# 4005–06.) That fact notwithstanding, Dr. Norris went on to systematically consider the merits of the evidence Plaintiff submitted on appeal.

First, with respect to the IME requested by Unum, Dr. Norris noted that Dr. Lin documented a comprehensive exam; Plaintiff's right knee was stable; observed functional transfers and sitting tolerance were not consistent with performance during the physical exam; and Plaintiff's migraines were managed with Botox injections. (*Id.* at Page ID# 4006–07.) Dr. Norris concluded that Dr. Lin's IME report findings were reasonable and consistent with the clinical data. (*Id.* at Page ID# 4007.) Although Plaintiff criticizes Dr. Lin's evaluation as "deficient and unreliable" (Pl's Motion at Page ID# 4250), and her affidavit during the administrative appeal alleged "several falsehoods in Dr. Lin's report" (*id.* at Page ID# 4257), physiatrist Dr. Lin is Board-certified in Physical Medicine and Rehabilitation, and the only other physiatrist who offered an opinion in support of Plaintiff's administrative appeal—Dr. Minard— merely criticized Waddell's signs (which Dr. Lin mentioned once) as an unreliable indicator of malingering (Record at Page ID# 3754). Even a cursory review of Dr. Lin's IME report reveals that the comment regarding Waddell's signs was not a significant factor in his conclusion that

Plaintiff could perform full-time sedentary work, and Dr. Minard made no other comments to challenge any of Dr. Lin's other findings.[3]

Second, with respect to the FCE report, in which Mr. Secrest concluded that he could not "confidently recommend competitive employment" even within the sedentary range (*id.* at Page ID# 4007), Dr. Norris noted that the "[Straight-Leg Raise] testing, shoulder weakness, observed sitting tolerance, and gait abnormality" observed during the FCE, which Mr. Secrest used to criticize some of Dr. Lin's findings (*id.* at Page ID# 3578), "were inconsistent [with] findings noted during the prior IME and contemporaneous examinations by treating physicians." (*Id.*) Dr. Norris observed that Plaintiff's performance during the FCE was largely consistent with sedentary demands, but deferred assessment of the vocational components of the report, including comments related to positional changes, to one of Unum's vocational rehabilitations consultants, who would have "specialty training and experience in vocational issues." (*Id.*) As set forth above, Unum's vocational rehabilitation consultant, Ms. Marsiano, found that Plaintiff could perform positional changes in the context of the identified alternative gainful occupations.

Third, with respect to Dr. Minard's October 4, 2018 IME report, which concluded that Plaintiff could not perform full-time sedentary work, Dr. Norris noted that the exam findings were inconsistent with both Dr. Lin's IME report as well as examinations by Plaintiff's treating physicians; that residual effects of a knee injury in August 2018 likely affected Plaintiff's gait on exam; and that Dr. Minard's exam findings were not consistent with the severe level of impairment reported by Plaintiff or with a degree of functional compromise that would preclude

---

[3] Because Dr. Minard does not otherwise challenge Dr. Lin's IME findings, Plaintiff must rely primarily on her own affidavit testimony challenging Dr. Lin's IME report. Unum does not dispute that Plaintiff herself attended medical school, but she completed only 6 months of a first-year residency in Family Medicine before taking a medical leave of absence, and her own medical license is inactive. (Record at Page ID# 1155.) On balance, Unum concluded that the weight of clinical evidence supported the findings in Dr. Lin's report.

sedentary work. (*Id.* at Page ID# 4007.) Overall, Dr. Norris pointed out that the record did not support continuing restrictions because diagnostic imaging, including an MRI and X-rays of the right knee in August 2018, did not identify structural disease or pathologic conditions consistent with severe functional loss; the modest intensity of treatment would not indicate less than sedentary capacity; and none of Plaintiff's treating physicians supported her disability. (*Id.* at Page ID# 4005–09.)

### 10. Unum Upholds the Decision to Deny Benefits.

Unum[4] upheld its decision to deny benefits by letter dated November 29, 2018, concluding that Plaintiff could perform other gainful occupations, including that of a Hospital Admitting Director, Clinic Operations Director, and Clinic Manager. (*Id.* at Page ID# 4041–52.) Responding to the concerns raised by Plaintiff's counsel, Unum provided a detailed summary of the findings of its vocational and physician consultants, and noted that Plaintiff's treating physicians and an IME physician supported Plaintiff's capacity for full-time, sedentary work. (*Id.*) This lawsuit followed on September 30, 2020.

### LAW AND ARGUMENT

## A. Legal Standard

There is no dispute that the deferential arbitrary-and-capricious standard of review applies to this Court's consideration of Unum's decision to discontinue Plaintiff's disability benefits. Although Unum acknowledges that a structural conflict exists because it both administers and pays disability claims, settled Sixth Circuit law emphasizes that this conflict is merely one of several considerations when determining the reasonableness of an administrator's

---

[4] Although Plaintiff's motion implies that Lead Appeals Specialist Kurt Phillips alone made the decision to discontinue benefits, the administrative record confirms that the decision on appeal— as well as the initial decision to deny benefits—involved a team of vocational and clinical specialists as well as multiple Unum claims personnel.

14

decision, and a claimant "must do more than offer general inferences of a conflict based on self-interest." *Collins v. Unum Life Ins. Co. of Am.*, 682 F. App'x 381, 387 (6th Cir. 2017) (quotation marks omitted). Here, as explained in more detail below, Plaintiff chose not to pursue any discovery related to the structural conflict, and offers no evidence of bias related to that conflict.

Settled law confirms that, so long as Unum can offer a "reasonable explanation for the administrator's decision denying benefits in light of the plan's provisions, then the decision is neither arbitrary nor capricious." *Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 308 (6th Cir. 2010). "This standard is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Shields v. Reader's Digest Ass'n, Inc.*, 331 F.3d 536, 541 (6th Cir. 2003) (quotation marks omitted); *see McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064–65 (6th Cir. 2014) ("An "extremely deferential review," to be true to its purpose, must actually honor an "extreme" level of "deference" to the administrative decision."). The Sixth Circuit holds that, "[g]enerally, when a plan administrator chooses to rely upon the medical opinion of one doctor over that of another in determining whether a claimant is entitled to ERISA benefits, the plan administrator's decision cannot be said to have been arbitrary and capricious because it would be possible to offer a reasoned explanation, based upon the evidence, for the plan administrator's decision." *E.g.*, *McDonald v. W.-Southern Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003).

The landscape of medical and vocational records before the Court has changed in 9 years. On the record before the Court, and for the reasons sent forth below, Unum's decision, at minimum, satisfies this deferential standard.

**B.** __Unum Did Not Act Arbitrarily or Capriciously in Denying Plaintiff Benefits__.

At very least, the record offers a "reasonable explanation" as to why Unum denied long-term disability benefits. *See Schwalm*, 626 F.3d at 308. As set forth above and in the relevant denial letters, Unum acted in good faith and relied on sensible grounds in denying Plaintiff's claim. The record as it stands today looks vastly different than it did in July 2012, when Unum upheld an earlier decision to discontinue Plaintiff's benefits because she had "chosen not to work on a part-time basis in a gainful occupation." (Record at Page ID# 2420–25.) In *Jalali I*, this Court pointed out that both the IME report that Unum requested from Dr. Perkins as well as the statements of Plaintiff's treating physician, Dr. Seeder, supported restrictions from part-time work. *Jalali I*, 2014 U.S. Dist. LEXIS 39606, at *4–5, 15. The exact opposite is true here.

The clinical evidence at issue in *Jalali I* is from nearly a decade ago. Since then, Plaintiff has had two daughters with respect to whom she shares responsibility of care; she studied for and received an MBA; Unum requested and received an IME report from Dr. Lin that concluded Plaintiff could perform full-time, sedentary work; each of Unum's clinical and physician consultants concluded on separate reviews that the record did not support any continuing restrictions from full-time, sedentary work; and none of Plaintiff's four treating physicians now support restrictions or limitations. Moreover, a vocational report identified at least 6 alternative gainful occupations for Plaintiff, given her skills and experience. In other words, the information available to Unum now is vastly different from the record in 2011. *See Godmar v. H-P Co.*, 631 F. App'x 397, 402 (6th Cir. 2015) ("The ultimate question is whether the plan administrator had a rational basis for concluding that the claimant was not disabled **at the time of the decision**.") (emphasis added). This is not a situation where "the findings and opinions of [Plaintiff's] treating medical provider have been ignored or not given proper weight in comparison with those of a

16

one-time IME." *Farr v. Hartford*, 564 F. Supp. 2d 1255, 1263 n.4 (D. Kan. 2008). Instead, the IME that Unum solicited is on all fours with the conclusions of Plaintiff's own treating physicians—a fact that Plaintiff noticeably did not rebut or attempt to contest in her administrative appeal. Although Plaintiff's counsel obtained competing opinions from one-time examiners during the administrative appeal, that fact does not render Unum's decision arbitrary or capricious given the ample record support for its conclusion that Plaintiff has full-time, sedentary capacity. *See McDonald*, 347 F.3d at 169. As such, Unum had a reasonable basis to discontinue benefits on these facts. Although Plaintiff's motion attempts to convince this Court otherwise, as set forth below, each of her arguments are unpersuasive.

**C.**     **Plaintiff's Arguments for Reversing Unum's Decision are Meritless.**

    **1.**     **The Record Supports Improvement in Plaintiff's Condition and a Rational Basis for Discontinuing Benefits.**

First, although Plaintiff claims that Unum "failed to adduce evidence that [her] condition had improved" (Pl's Motion at Page ID# 4259), the record compels the opposition conclusion. As an initial matter, Plaintiff cites *Kramer v. Paul Revere Life Insurance Company*, 571 F.3d 499 (6th Cir. 2009), to argue that an insurer acts arbitrarily where it discontinues benefits "in the absence of any medical evidence that the plaintiff's condition had improved." *Id.* at 507. The Sixth Circuit later clarified that language in *Kramer*, holding: "This is not, however, a wholesale endorsement of the notion that a lack of evidence of improvement is sufficient unto itself to prove a plan administrator's decision arbitrary and capricious. Rather, *Kramer* coupled the absence of such evidence with a lack of explanation or support for the plan's decision, among other factors." *Morris v. Am. Elec. Power Long-Term Disability Plan*, 399 F. App'x 978, 984 (6th Cir. 2010). In sum, when an insurer evaluates whether further benefits are appropriate, "the ultimate question is whether the plan administrator had a rational basis for concluding that [the

17

claimant] was not disabled at the time of the new decision." *Godmar*, 631 F. App'x 397, 402 (6th Cir. 2015) (quoting *Morris*, 399 F. App'x at 984). Here, the record statements of Plaintiff's own treating physicians, IME physician Dr. Lin, and Unum physician consultants Dr. Fox and Dr. Norris constitute evidence of Plaintiff's improvement and ability to work a full-time sedentary job, and offer a rational basis for discontinuing benefits.

Plaintiff notes that several years ago, the Court concluded that the medical record in *Jalali I* supported her inability to perform part-time work. But the Court's discussion in *Jalali I* relied heavily on the fact that Plaintiff's treating physician supported restrictions in January 2012, and the physician who conducted an IME at Unum's request in June 2011 felt that "at best initially I could see her working up to 20 hours a week" in a sedentary position. *Jalali I*, 2014 U.S. Dist. LEXIS 39606, at *4, 13–14. When Unum discontinued benefits 7 years later, neither Plaintiff's treating providers nor the physician who conducted an IME at Unum's request supported any restrictions from full-time sedentary work.

Further, although the parties did not focus on diagnostic imaging in *Jalali I*, Plaintiff argues without any substantial record support that imaging studies in 2015—more than two years before Unum discontinued benefits—reveal "a woman whose health is in decline," and that Dr. Minard believed her condition "had deteriorated" since a 2011 IME, and "such deterioration was natural and expected." (Pl's Motion at Page ID# 4259.) But Plaintiff's spine and brain MRI in December 2015 revealed normal alignment, well-maintained disks, normal overall spinal canal diameter, and no major brain abnormality. (Record at Page ID# 3274–75.) Moreover, Plaintiff's physiatrist, Dr. Natalie, observed "nothing concerning" in her 2015 knee MRI, and Plaintiff did not opt for any knee injection or orthopedic follow-up. (*Id.* at Page ID# 3101, 3665.) Rather than focusing on the opinions of the treating physicians who ordered those imaging studies for

purposes of her treatment, Plaintiff cites only the comments of Dr. Minard, who does not explain how or why the imaging would support a deterioration in functional capacity. Unum physician consultants that considered those diagnostic images did not consider them evidence of deteriorating function. For example, Dr. Fox observed that the November 2015 diagnostic images "do not support the presence of a severe spine condition and a loss of exertional work capacity," and while the images included the potential for neural compromise and reflected the degenerative changes normal with aging, "recent examinations have not documented gait, sensory, reflex or motor deficits." (*Id.* at Page ID# 3333.) And during the administrative appeal, Dr. Norris concluded that more recent diagnostic imaging, including an August 2018 MRI and X-ray of the right knee, was consistent with prior lumbar surgeries and ongoing degenerative changes, but none that would preclude Plaintiff from full-time, sedentary activity. (Record at Page ID# 4006–07.) In sum, the record evidence supports improvement on the part of Plaintiff and offers a rational basis for discontinuing benefits.

### 2. The Record Confirms that Unum Properly Considered the FCE Report Plaintiff Submitted on Appeal.

The record evidence also confirms that Unum properly considered the FCE that Plaintiff's counsel submitted on appeal. As an initial matter, although Plaintiff implies that Unum rejected the FCE because it post-dated the denial of her claim by 5 months (Pl's Motion at Page ID# 4260), Unum considered the FCE less persuasive because it was inconsistent with the conclusions of both Plaintiff's treating providers and IME physician Dr. Lin. Specifically, Unum physician consultant Dr. Norris noted that the "[Straight-Leg Raise] testing, shoulder weakness, observed sitting tolerance, and gait abnormality" observed during the FCE "were inconsistent [with] findings noted during the prior IME and contemporaneous examinations by treating physicians." (Record at Page ID# 3578.)

19

Although Plaintiff takes issue with the fact that Unum described Dr. Natalie as a "longstanding" treating provider, the fact that Plaintiff treated with the retired Dr. Seeder for a longer amount of time than Dr. Natalie does not change the fact that she began treating with Dr. Natalie as early as October 2015 (*id.* at Page ID# 3188)—more than 3 years before the final decision on Plaintiff's claim—and identified Dr. Natalie as her sole treating provider (*id.* at Page ID# 3037). And while Plaintiff tries to minimize his May 31, 2017 statement as to her functional capacity, Dr. Natalie expressly checked "yes" in response to whether Plaintiff could perform full-time sedentary demands, and signed and dated that document. (*Id.* at Page ID# 3090–92.) Moreover, Unum confirmed with Dr. Natalie's office that he had no changes to that statement during a February 5, 2018 phone call.[5] (*Id.* at Page ID# 3465, 3467.) Plaintiff hypothesizes that Dr. Natalie might have reached a different conclusion if provided a copy of Dr. Perkins's IME report from June 2011 (Pl's Motion at Page ID# 4260 n.12), but not only is there no explanation why a report from a one-time physiatrist examiner dating back several years would offer more useful information than his regular treatment of Plaintiff, there is no reason why Plaintiff could not have provided Dr. Natalie the same information. Notably, although her treating neurologist (Dr. Barfield) and her treating physiatrist (Dr. Natalie) identified no restrictions before Unum discontinued her claim, Plaintiff provided no evidence on appeal that her treating providers supported her claim.

Further, although Plaintiff claims that "an FCE, not a physician's report, is the gold standard for objectively measuring a claimant's capacity for employment" (Pl's Motion at Page

---

[5] Notably, the only office note from Dr. Natalie that Plaintiff describes as consistent with Mr. Secrest's FCE is dated October 27, 2017 (Record at Page ID# 3896), before the call in which Unum confirmed that Dr. Natalie continued to agree that Plaintiff had full-time, sedentary capacity. Moreover, the same record states that Plaintiff experienced "greater than 50% reduction in [low back] pain that lasted over 3 months," and notes Dr. Natalie's optimism that her right knee symptoms would improve with epidural steroid injections. (*Id.*)

ID# 4261), the cases she cites merely describe an FCE as "[o]ne method of objective proof of disability." *E.g.*, *Huffaker v. Metro. Life Ins. Co.*, 271 F. App'x 493, 500 (6th Cir. 2008); *see Brooking v. Hartford Life & Acc. Ins. Co.*, 167 F. App'x 544, 549 (6th Cir. 2006) (same). These are not cases that would support Plaintiff's implied argument that a one-time FCE should carry more evidentiary weight than the contrary conclusions of a plaintiff's own treating providers, an administrator's physician consultants, and an independent medical examiner. In sum, Unum properly weighed the FCE against the wealth of other evidence supporting full-time sedentary work when it determined that the Policy did not permit continued benefits.

### 3. Unum Did Not Improperly Import an "Accommodation Provision" into the Policy.

Plaintiff next contends, without basis, that Unum improperly considered whether a potential employer would be able and willing to accommodate Plaintiff's restrictions when determining whether she could perform alternative gainful occupations. Neither the record evidence nor the case law cited by Plaintiff support this theory.

Although Plaintiff characterizes Unum's decision that alternative gainful occupations existed as "speculation" (Pl's Motion at Page ID# 4263), the record confirms that Unum relied on the expertise of its vocational rehabilitation consultants. Specifically, Unum relied on two vocational specialists, Ms. Darman and Ms. Marsiano, both of whom are Certified Rehabilitation Counselors. (Record at Page ID# 3468–69, 3838–39.) Both Ms. Darman and Ms. Marsiano agreed that Plaintiff was "reasonably fitted" for other gainful occupations, including Cardiac Monitor Technician, Director Volunteer Services, Patient Relations Representative, Hospital Admitting Director, Clinic Operations Director, and Clinic Manger. (*Id.*) During the administrative appeal, Ms. Marsiano addressed Mr. Atkinson's concern that Plaintiff would need to alternate sitting, standing, and walking, by pointing out that a sit/stand desk would allow for

positional changes, and that there would be occasions for brief periods of walking in the office context. (*Id.* at Page ID# 3838–39.) Ms. Marsiano described sit/stand desks as "prevalent in office work and . . . available for the occupations identified." (*Id.* at Page ID# 3839.)

Plaintiff criticizes the analysis of Unum's vocational specialists, contending that they imported the possibility of an "accommodation" into the "any gainful occupation" language in the Policy. But the case law she cites does not support her claim. Citing the Ninth Circuit's decision in *Saffle v. Sierra Pacific Power Co. Bargaining Unit LTD Income Plan*, 85 F.3d 455 (9th Cir. 1996), Plaintiff argues that allowing Unum's vocational specialists to consider accommodations when identifying alternative gainful occupations would impermissibly expand the Policy. But in *Saffle*, the Ninth Circuit did not consider an "any gainful occupation" provision, but only whether an insurer could consider accommodations that would allow the claimant to perform her "regular occupation." *Id.* at 460. The Ninth Circuit itself recognizes that distinction, noting in *Tenney v. BankAmerica Corp. Employee Benefits Administrative Committee*, No. 98-16200, 1999 U.S. App. LEXIS 16024 (9th Cir. July 13, 1999), that "where, as here, a benefits plan defines "total disability" to depend on whether a claimant is "reasonably fitted" for any occupation [as opposed to her "regular occupation"], a plan administrator may consider whether a reasonable accommodation would enable the claimant to work." *Id.* at *10; *see Tebo v. Sedgwick Claims Mgmt. Servs.*, 848 F. Supp. 2d 39, 58 (D. Mass. 2012) (distinguishing *Saffle* by pointing out that, "by considering an accommodation that was essentially outside the realm of Saffle's job, the administrator evaluated the claimant's

employability with a modification of her duties. This is not an issue when determining whether plaintiff can be employed in *any* occupation") (internal quotation marks and citation omitted).[6]

In fact, a court in the Sixth Circuit recently concluded that an FCE performed by a physical therapist was deficient because it did not appear "to take into consideration accommodations that [the defendant insurer's] experts say would allow [the claimant] to work in a sedentary occupation." *Bustetter v. Standard Ins. Co.*, No. 18-1-DLB-EBA, 2021 U.S. Dist. LEXIS 59489, at *24 (E.D. Ky. Mar. 29, 2021). As the *Bustetter* court pointed out:

> Standard's vocational expert asserted that Bustetter's difficulty sitting for more than 45 minutes at a time could be addressed with the provision of a sit/stand workstation. An employee's documented inability to sit for prolonged periods does not necessarily preclude him from performing full-time sedentary work. *See Evans v. Metro. Life Ins. Co.*, 190 F. App'x 429, 436 (6th Cir. 2006).

*Id.* Here, although Plaintiff suggests that both Mr. Secrest and Mr. Atkinson believed that Plaintiff's restrictions could not be reasonably accommodated, they do not appear to have considered the possibility of specific accommodations. Plaintiff does not offer any serious argument from the record that the identified occupations would not have a sit/stand desk available, or that a sit/stand desk would not reasonably accommodate her condition. And the case law cited does not undermine Unum's position that its vocational experts could consider a

---

[6] The Supreme Court's decision in *Cleveland v. Policy Management Systems Corporation*, 526 U.S. 795 (1999), is likewise inapposite. Although Plaintiff points out that "when the [Social Security Administration ("SSA")] determines whether an individual is disabled for [Social Security Disability Income ("SSDI")] purposes, it does *not* take the possibility of reasonable accommodation" into account, *id.* at 803, the *Cleveland* Court made that distinction merely to contrast SSA claims with claims under the Americans with Disabilities Act of 1990 (the "ADA"). Noting that the SSA receives more than 2.5 million claims for disability benefits per year and has limited administrative resources, the *Cleveland* Court observed that the SSA reasonably does not consider workplace-specific accommodation matters in an SSDI application. *Id.* The Court noted that the same claimant could file a suit under the ADA claiming that she could perform her job *with* reasonable accommodations, while maintaining an SSDI claim that she could not perform her own job (or other jobs) *without* such accommodation. *Id.* Nothing in the *Cleveland* decision affects Unum's decision under an ERISA policy to rely on vocational specialists that consider the use of sit/stand desks in their analysis.

sit/stand desk as part of its analysis of whether Plaintiff could perform the duties of "any gainful occupation."

Moreover, the fact that other benefit plans may expressly allow administrators to consider accommodations, *see Shaw v. AT&T Umbrella Benefit Plan No. 1*, 795 F.3d 538, 541–42 (6th Cir. 2015), is not persuasive evidence that Unum cannot consider reasonable accommodations in this context. It could just as easily be said that Plaintiff is importing into the Policy a definition of disability that requires Unum to identify a gainful occupation "without any accommodation necessary." As set forth above, the cases cited by Plaintiff are distinguishable, and Unum properly relied on its vocational experts when concluding that Plaintiff could perform the duties of the identified gainful occupations. (*See* Record at Page ID# 3839.)

### 4. The Record Confirms that Unum Properly Considered the IME and Vocational Reports Plaintiff Submitted on Appeal.

Just as Unum properly considered Mr. Secrest's FCE report, the record likewise confirms that Unum properly considered the vocational report and IME report that Plaintiff's counsel submitted on appeal. With respect to Dr. Minard's IME, although Plaintiff once more claims that Unum "discounted" the report because it post-dated the denial of her claim by 8 months, Unum did not rely on that point, but emphasized the fact that the IME report was inconsistent with not only Dr. Lin's IME report, but also the opinions of Plaintiff's own treating providers. (Record at Page ID# 4005–06.) For example, Unum noted that the migraines associated with Plaintiff's second car accident had improved and were stable after Botox injections, and her treating neurologist (Dr. Barfield) was not providing restrictions or limitations. (*Id.* at Page ID# 4005–06.) Further, Plaintiff's treating physiatrist, Dr. Natalie, agreed that she could perform full-time sedentary work. (*Id.* at Page ID# 4006.) Unum also noted the residual effects of an August 2018

24

knee injury likely affected Plaintiff's gait on exam given otherwise normal gait findings,[7] and that the findings were not consistent with the severe level of impairment reported by Plaintiff or with a degree of functional compromise that would preclude sedentary work. (*Id.* at Page ID# 4007.) In his assessment of Dr. Minard's IME, Dr. Norris likewise noted that, although Plaintiff reported chronic low back pain, the clinical records showed inconsistent sensory findings; that contemporaneous neurological examinations were "generally unremarkable" despite reported migraines and dizziness; and, excluding her right knee injury in August 2018, clinical records showed no instability, diminished range of motion, joint deformity, or gait disturbance. (*Id.*) In fact, after that August 2018 knee injury, a requested MRI of the right knee showed only "mild soft tissue swelling" and no acute fracture or ligamentous/meniscal tear. (*Id.*) And when Dr. Wilcox examined Plaintiff's August 14, 2018 right knee injury, he found "no evidence of fracture, dislocation or significant abnormality" and "[n]o convincing evidence of a joint effusion" (*id.* at Page ID# 3780). In terms of treatment, he felt she could rely on physical therapy, warm compresses, and anti-inflammatories, and informed Plaintiff he felt it would "resolve and absorb over the next several weeks" (*id.* at Page ID# 3778).

Further, with respect to Mr. Atkinson's vocational report, although Plaintiff claims that Unum did not give it adequate consideration, Unum asked one of its vocational specialists to review the report. (*Id.* at Page ID# 3837–39.) As explained earlier, although Mr. Atkinson concluded that "the medical does not support the ability to return to work in any capacity on a full time basis" (*id.* at Page ID# 3763), Unum's vocational consultant, Ms. Marsiano, relied on

---

[7] Dr. Norris, who reviewed Dr. Minard's IME, is Board-certified in Family and Occupational Medicine; as such, his expert opinion regarding Plaintiff's gait is far from "rank speculation." (Pl's Motion at Page ID# 4265.) Dr. Norris specifically noted that Plaintiff's "[g]ait remained predominantly normal with the exception of the [July] 2018 FCE, the [October ] 2018 IME, and examinations after re-injuring her knee in August 2018." (Record at Page ID# 4007.)

25

the ample clinical support for Plaintiff's full-time sedentary capacity, including the opinions of her own treating physicians, to conclude that Plaintiff could perform the duties of the identified gainful occupations. Even Mr. Atkinson conceded that "with a full sedentary release to work"— which Plaintiff received from her treating physiatrist, Dr. Natalie—Plaintiff "would be able to earn a [gainful] wage . . . based on her completion of a medical doctorate and a master of business administration." (*Id.* at Page ID# 3762.) In other words, this "vocational" dispute is actually a medical dispute, and the record information easily offers a rational basis for concluding that Plaintiff could perform full-time sedentary work.[8]

### 5.    Unum Reasonably Relied on the Report of its IME Physician, Dr. Lin.

Finally, Unum reasonably relied on the IME report of Dr. Lin, who concluded that Plaintiff could work a full-time, sedentary occupation. Contrary to Plaintiff's assertions, Unum specifically "acknowledge[d] [Plaintiff's] statements" in its denial letter, but noted that its physician consultant (Dr. Norris) determined that the clinical record as well as the conclusions of her treating providers supported the findings of Dr. Lin's IME report. (Record at Page ID# 4046.) Although Plaintiff makes much of the fact that Dr. Lin mentioned Waddell's signs— apparently, a single time (*id.* at Page ID# 3446)—Waddell's signs were far from "the core of his opinion" (Pl's Motion at Page ID# 4266). In fact, Dr. Lin doesn't even mention Waddell's signs in his conclusions, instead focusing on the lack of radicular symptoms on physical exam, negative lumbar provocative tests, observed functional transfers and sitting tolerance, the lack of instability in the knee, the fact that her headaches were managed with injections, and the fact that her cervical conditions were managed by medications. (Record at Page ID# 3447–48.) Notably,

---

[8] Although Plaintiff also claims that Unum failed to consider her affidavit (Pl's Motion at Page ID# 4265–66), this affidavit did not address the vocational reports or Dr. Minard's IME, so Unum naturally did not consider it alongside those discussions. As discussed below, Unum addressed Plaintiff's affidavit in the context of its discussion of Dr. Lin's IME.

Dr. Minard's sole direct criticism of Dr. Lin's IME report was his comment that Waddell's signs are unreliable. (*Id.* at Page ID# 3754.) Plaintiff does not appear to have informed her IME physician, Dr. Minard, of any of her stated concerns about Dr. Lin's IME report, and Dr. Minard did not raise any of the same issues. And regardless, as Unum explained to Plaintiff, Dr. Norris ultimately agreed with Dr. Lin's conclusion that the Waddell's signs as well as "give-way weakness documented during Dr. Leonard's July 13, 2018 physical exam" would suggest a non-organic component to Plaintiff's reported weakness, while acknowledging that a positive Waddell's sign does not "rule out an organic component." (*Id.* at Page ID# 4046.)

Further, with respect to Mr. Secrest's allegations of inconsistencies in Dr. Lin's report, Unum's physician consultant, Dr. Norris acknowledged Mr. Secrest's criticisms, but stated that Mr. Secrest's findings were not only inconsistent with the findings in Dr. Lin's IME, but also "contemporaneous examinations by treating physicians." (Record at Page ID# 3578.) And while Plaintiff describes Dr. Lin as "unabashedly biased" based on the website of his affiliated company, Disability & Occupational Consultants ("DOC"), as explained in more detail below, Plaintiff conducted no discovery related to this alleged bias, and to argue bias strictly from the fact that Dr. Lin is affiliated with an IME provider that has partnered with law firms, insurance companies, and state entities (*id.* at Page ID# 3800), is not persuasive evidence of bias.

As set forth at length above, this is not a case where Unum failed or refused to address evidence. Instead, Unum considered the evidence that Plaintiff submitted on appeal and found it unpersuasive when set against the conclusions of Plaintiff's own treating physicians, the clinical record as a whole, the conclusions of Unum's physician consultants, and the conclusions of an IME physician. At very least, Unum had a reasonable basis on the record to discontinue benefits.

**D.** **Plaintiff Cannot Support Any Claim That a Structural Conflict Biased Unum's Decision on Her Claim.**

In a final effort to persuade the Court to reverse Unum's administrative decision, Plaintiff speculates that, because Unum both administers and pays claims under the Policy, this structural conflict caused Unum to discontinue her claim out of self-interest. (*See* Pl's Motion at Page ID# 4266–70.) Although Plaintiff posits several hypotheses in support of her theory, there is no concrete evidence, in the record or otherwise, to support her allegation that Unum's structural conflict "infected" its administration of her claim. (*Id.* at Page ID# 4266.)

As an initial matter, although cross-motions for judgment are typically restricted to review of the administrative record, *Schwalm*, 626 F.3d at 308, discovery is available for questions related to a conflict of interest or other alleged procedural bias, *e.g.*, *Canter v. Ankermes Blue Care Elect Preferred Provider Plan*, 328 F.R.D. 485, 495–96 (S.D. Ohio 2018). In order to obtain conflict discovery, a plaintiff must "put forth a factual foundation to establish that [she] has done more than merely allege bias." *Id.* at 495 (quoting *Collins v. Unum Life Ins. Co. of Am.*, 682 F. App'x 381, 389 (6th Cir. 2017)). Once past that minimal hurdle, this Court permits conflict discovery related to a variety of topics, including any incentives for employees reviewing disability claims, the contractual connections between an insurer and claim reviewers, statistical data related to claim denials, and claim guidelines. *E.g.*, *Geiger v. Pfizer, Inc.*, 271 F.R.D. 577, 583 (S.D. Ohio 2010); *see McLaren v. Tr. of the Grp.*, No. 1:16-cv-1164, 2017 U.S. Dist. LEXIS 164944, at *13–14 (S.D. Ohio Oct. 4, 2017) (allowing conflict discovery based on the "barest of an additional showing of potential bias"). Notably, perhaps because she could not make out this evidentiary showing, Plaintiff chose not to request any conflict discovery in this case. As a result, she must rely on conjectures that are ultimately unpersuasive.

Although Plaintiff claims that evidence of Unum's conflict "pervades the record" (Pl's Motion at Page ID# 4267), there is no direct evidence (in the record or otherwise) of any bias that affected her claim. That lack of evidence is fatal to her claim, because "mere allegations of the existence of a structural conflict of interest are not enough; there must be some evidence that the alleged conflict of interest affected the plan administrator's decision to deny benefits." *Thompson v. Transam Trucking, Inc.*, 750 F. Supp. 2d 871, 882–83 (S.D. Ohio 2010) (quoting *Cochran v. Trans-General Life Ins. Co.*, 12 F. App'x 277, 281 (6th Cir. 2001)). For example, Plaintiff first argues that her claim is "expensive," but while this might evidence the "potential" for self-interested decision-making, *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 292 (6th Cir. 2005), there is no evidence that Unum improperly discontinued benefits because it perceived Plaintiff's claim as expensive.

Plaintiff likewise argues that the history of her claim suggests a "whiff of retaliation" because Unum previously reached adverse decisions on her claim. But Plaintiff's narrative mischaracterizes the reality. When Unum first discontinued Plaintiff's claim, it ultimately reversed that decision on appeal and continued benefits. The later issue in *Jalali I*, from Unum's perspective, turned largely on Plaintiff's choice not to work part-time in order to pursue an MBA degree. And, as this Court knows, *Jalali II* did not involve the merits of Plaintiff's disability claim at all, but concerned whether Unum could apply an offset due to the settlement of Plaintiff's first car accident litigation. The decision at issue in this case, by contrast, rested on noticeable changes in the clinical record, including the opinions of Plaintiff's own treating providers, which supported the decision to discontinue benefits.

Next, Plaintiff alleges that Dr. Lin "does not appear to be a practicing physician," in contrast to the earlier IME secured by Unum from Dr. Perkins, who Plaintiff describes as a

"respected, practicing physical medicine and rehabilitation physician." As an initial matter, neither Plaintiff's criticisms nor her accolades are supported by citation to the record. Regardless, it is hyperbole to suggest that, simply because Dr. Lin works with DOC, a company which provides IMEs, he and the company are "unabashedly anti-claimant." (Pl's Motion at Page ID# 4268–69.) The language cited by Plaintiff—that DOC "partner[s]" with insurers in "providing answers to the often complex medical-legal questions that dominate your claims management issues and impact your bottom line" (*id.* at Page ID# 4269) is not self-evidently an anti-claimant perspective; IMEs that resolve "complex medical-legal questions" with clarity will naturally be a financial help to insurers.[9] Plaintiff did not ask the Court for an opportunity to obtain discovery related to whether Unum "repeatedly retained"[10] Dr. Lin, or statistical data related to any prior IMEs. She can only offer "general inferences of a conflict based on self-interest," *Collins*, 682 F. App'x at 387, and that is insufficient to support a theory of bias as to her own claim. And in any case, Plaintiff's own treating physicians—who she can hardly accuse of bias—do not support her disability claim.

With respect to Plaintiff's claim that "only Unum's conflict" can explain its decision (Pl's Motion at Page ID# 4269), Unum has already explained, at length, that the record here confirms that Unum had a reasonable basis to discontinue benefits. Plaintiff's own treating physicians do not support her disability claim. Unum's in-house physicians concluded after comprehensive record reviews that Plaintiff could work a full-time, sedentary position, agreeing

---

[9] For example, an IME that finds total disability would allow an insurer to avoid expensive litigation over claims that should otherwise have been paid.

[10] Although Plaintiff suggests that physicians "repeatedly retained by benefit plans" may have an incentive to find claimants not disabled (Pl's Motion at Page ID# 4250), there is no evidence that Unum "repeatedly retained" Dr. Lin, and, in any case, it could just as easily be said that IME physicians or FCE specialists repeatedly retained by counsel for plaintiffs might have an incentive to find plaintiffs disabled.

with Dr. Lin, to whom Unum referred Plaintiff for an IME. The record amply confirms that clinical evidence, and not the structural conflict, prompted Unum's decision.

Finally, Plaintiff alleges that Unum's purported "history" of defective claims handling is evidence of bias with respect to her own claim. Although some courts criticized Unum's claims administration "in the decade ending in 2003," *Jones v .Unum Provident Corporation*, 596 F.3d 433, 438 (8th Cir 2010), courts typically do not rely on that prior history as a factor in their arbitrary-and-capricious review where, as here, the claim at issue occurred after Unum entered into a November 2004 Regulatory Settlement Agreement ("RSA") with insurance regulators that instituted a plan of corrective actions to address unique claims handling concerns. *See id.* (not considering the alleged history for a claim filed in 2005); *Hagopian v. Johnson Financial Group*, No. 09-C-926, 2010 U.S. Dist. LEXIS 101984, at *20–21 (E.D. Wisc. Sept. 23, 2010) (same). The case cited by Plaintiff, *McCauley v. First Unum Life Insurance Company*, 551 F.3d 126 (2d Cir. 2008), involved a claim denied in 1996, and later decisions out of the Second Circuit acknowledge that, "[s]ince *McCauley*, . . . courts in this and other circuits have acknowledged that First Unum has improved its claims-handling practices." *Hinchey v. First Unum Life Ins. Co.*, No. 17-cv-8034, 2020 U.S. Dist. LEXIS 49703, at *73–75 (S.D.N.Y. Mar. 20, 2020) (citing *Truitt v. Unum Life Ins. Co. of Am.*, 729 F.3d 497, 514 (5th Cir. 2013), and *Daniel v. UnumProvident Corp.*, No. CV-04-1073, 2010 U.S. Dist. LEXIS 115171, at *15 n.10 (E.D.N.Y. Oct. 7, 2010). Moreover, Plaintiff cites to no evidence—either in the administrative record or elsewhere—establishing that this purported history influenced its decision making with respect to her own claim. In fact, the record contains concrete examples of Unum's efforts to give Plaintiff's claim a comprehensive review. *See Carr v. Reliance Std. Life Ins. Co.*, 363 F. 3d 604, 606 n.2 (6th Cir. 2004) ("[W]e have not found that [the] inherent conflict of interest in any way

31

influenced Reliance's decision."). As set forth in this brief, Unum referred Plaintiff's file to two separate vocational specialists and two physician consultants for review; reviewed records and opinions from Plaintiff's treating physicians; and requested that Plaintiff participate in an IME. These actions belie any impact from purported historical bias. In sum, because Plaintiff did not establish that Unum's structural conflict impacted its review of her claim, the structural conflict has little to no bearing on this Court's review.

**E.**    **There is No Sixth Circuit Authority for an Order Importing a New Condition Precedent into the Policy for Purposes of Future Disability.**

As explained above, because the record in this case compels the conclusion that Unum reasonably discontinued Plaintiff's benefits, Plaintiff is not entitled to the reinstatement of her claim or any compensatory award of retroactive benefits. But even if that were not the case, Plaintiff cites no Sixth Circuit case law to support her request that the Court can declare her right to future benefits by altering the terms of the Policy and ordering Unum "to prove, by reasonable and objective evidence, that [Plaintiff's] medical condition has improved . . . as a condition precedent" to terminating her claim before age 65. (Pl's Motion at Page ID# 4270.)

Plaintiff herself concedes that the "ordinary remedy" in this Circuit is simply to reinstate benefits retroactively, and return the claim to the insurer to administer as normal. (*Id.* at Page ID# 4270–71.) In fact, although Plaintiff observes that this Court previously held that "plan administrators should not be given two bites at the proverbial apple where the claimant is clearly entitled to disability benefits," *Haning v. Hartford Life & Accident Ins. Co.*, 140 F. Supp. 3d 654, 675 (S.D. Ohio 2015), the Court's comment in *Haning* did not refer to any declaration related to claimant's continuing disability, but simply noted that a court should not remand a claim to an administrator where the record evidence clearly established a claimant's right to **retroactive** benefits. *Id.* at 675–76. The *Haning* Court even recognized that "the terms of the Plan permit

32

Hartford to require **continued** proof of Haning's disability" and noted that its opinion "does not limit the applicability of those provisions." *Id.* at 676 (citing *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 173 (6th Cir. 2007)).[11] Essentially, this Court disfavors any attempt to circumvent the terms of an ERISA plan by way of a Court order regarding future benefits. *E.g.*, *id.*; *see Osborn v. Principal Life Ins. Co.*, No. 2:17-cv-329, 2017 U.S. Dist. LEXIS 166877, at *10 (S.D. Ohio Oct. 10, 2017) (refusing to enter an order related to future benefits because "[the] court does not have the authority to assume the administrator's role of determining whether plaintiff continues to satisfy the requirements for long-term disability benefits under the terms of the Plan, nor . . . that kind of expertise."); *Jeffries v. Prudential Ins. Co.*, No. C-1-01-680, 2003 U.S. Dist. LEXIS 27365, at *11–12 (S.D. Ohio Dec. 4, 2003), *adopted by* 2004 U.S. Dist. LEXIS 30293 (S.D. Ohio Apr. 29, 2004) ("[T]he Court is without the authority to grant plaintiff a declaration that he is entitled to permanent and future benefits in contravention of the Plan terms.").

The Policy places the burden on Plaintiff to provide "proof of claim" as well as "proof of continuing disability" for purposes of satisfying the definition of disability in the insuring clause, and provides several grounds for terminating benefits, none of which expressly require "reasonable and objective evidence" that Plaintiff's "medical condition has improved." (Record at 105, 115, 120.) To enter the type of Order proposed by Plaintiff is tantamount to altering the terms of the Policy, and improperly shifts the burden of proof of disability to Unum. *See Cooper*,

---

[11] Although Plaintiff cites decisions from the Western District of Washington, District of Utah, and District of Oregon to argue that this Court can order the maximum amount of future benefits as a remedy (Pl's Motion at Page DI# 4271–72), these decisions are not binding authority, *e.g.*, *Marais v. Chase Home Fin., LLC*, 24 F. Supp. 3d 712, 721 n.8 (S.D. Ohio 2014), and, as set forth above, Sixth Circuit case law holds otherwise. Moreover, even if they had any precedential value, the record facts at very least confirm a rational basis for Unum to discontinue benefits, and certainly do not suggest that there would not be "any ground" in the future for Unum to deny benefits. *Foust v. Lincoln Nat'l Life Ins. Co.*, 416 F. Supp. 3d 1319, 1333 (D. Utah 2019).

486 F.3d at 173; *Osborn*, 2017 U.S. Dist. LEXIS 166877, at *10; *Jeffries*, 2003 U.S. Dist. LEXIS 27365, at *11–12. As such, Plaintiff's request for future benefits is improper.

**F.**     **<u>Oral Argument</u>**

Although Unum disagrees that this case merits oral argument because it believes that the administrative record, at minimum, offers a reasonable basis for its decision to discontinue Plaintiff's benefits, Unum does not oppose Plaintiff's request for argument.

<u>**CONCLUSION**</u>

In sum, Unum did not act arbitrarily or capriciously in discontinuing Plaintiff's benefits because none of her treating physicians support her disability claim; her main treating provider, Dr. Natalie, affirmatively stated that she could perform a full-time, sedentary job; IME physician Dr. Lin and Unum's physician consultants likewise concluded that she could work full-time at a sedentary level; and Unum's vocational specialists identified at least 6 alternative gainful occupations in her labor market. This is not the typical denial-of-benefits case, where a plaintiff claims that a plan administrator acted arbitrarily or capriciously because it failed to exercise its right to request an IME or did not properly weigh the opinions of her own treating providers. On this record, there is no basis for the Court to overturn Unum's administrative decision, and Unum respectfully requests that the Court grant Unum's motion for judgment on the record, deny Plaintiff's corresponding motion, and dismiss the Complaint against Unum, with prejudice.

Respectfully submitted,


s/ Olivia Lin Southam_____ _____
Brett K. Bacon (0022826)
bbacon@frantzward.com
Olivia Lin Southam (0085476)
osoutham@frantzward.com
FRANTZ WARD LLP
200 Public Square, Suite 3000
Cleveland, Ohio 44114
(216) 515-1660
(216) 515-1650 (facsimile)

*Counsel for Defendant*
*Unum Life Insurance Company of America*

## <u>CERTIFICATE OF SERVICE</u>

A copy of the foregoing was filed electronically on June 22, 2021. Notice of this filing

will be sent to all parties by operation of the Court's electronic filing system.


s/ Olivia Lin Southam
*Counsel for Defendant*
*Unum Life Insurance Company of America*

36