IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Sepanta Jalali, | : | Case No. 2:20-cv-5071 |
| Plaintiff, | : | Judge Marbley |
| v. | : | Magistrate Judge Preston Deavers |
| Unum Life Insurance Company Of America, | : | |
| Defendant. | : | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD[1]**

**INTRODUCTION**

In her opening memorandum, the Plaintiff, Sepanta Jalali, recalled that this Court had once before reversed Unum's termination of her long-term disability benefits. She noted that her medical condition had not improved since this Court's decision; indeed, she demonstrated that she had sustained additional damage to her spine in a 2015 car accident. And she argued that her claim for continuing disability benefits was supported by a functional capacity evaluation, an independent medical examination, and a vocational assessment.

Jalali also pointed to several deficiencies in Unum's analysis of her claim, including the utterly biased medical examination by Dr. Lin, Unum's application of a *de facto* modification of its plan language permitting consideration of non-existent accommodations, and Unum's willful misreading of the evidence she submitted.

---

[1] This Memorandum is also intended to serve as Plaintiff's Reply Memorandum in support of her own Motion for Judgment on the Administrative Record.

In its own opening memorandum, Unum highlights three aspects of the record that, it says, supports its decision to terminate Jalali's benefits: Dr. Natalie's check mark, Dr. Lin's opinion, and a subsequent file review by Dr. Scott Norris.

As Jalali notes in the pages that follow, the "quality and quantity" of the evidence supporting her disability is demonstrably stronger than the "quantity and quality" of Unum's evidence. But what is more, Unum cannot overcome a threshold problem – the overwhelming evidence that Jalali's medical condition has not improved in the years since this Court reversed Unum's earlier decision.

**ARGUMENT**

**I.     There is no evidence that Jalali's medical condition has improved since 2014.**

As Jalali pointed out in her opening memorandum, the Sixth Circuit has repeatedly held that an insurer acts arbitrarily and capriciously if it terminates a long-term disability claim absent evidence that the claimant's medical condition has improved. ECF 16, PID 4259-60, citing, *inter alia*, *Kramer v. Paul Revere Life Ins. Co.*, 571 F.3d 499, 507 (6th Cir. 2009); *McCollum v. Life Ins. Co. of N. Am.*, 495 F. Appx. 694, 704 (6th Cir. 2012); and *Caesar v. Hartford Life & Acc. Ins. Co.*, 464 F. Appx. 431, 436 (6th Cir. 2012). *See also Farley v. Hartford Life and Accident Ins. Co.,* Case No. 2:18-cv-722, Opinion and Order, March 13, 2020 (Doc. 22) at PID 910-911 ("Like in *McCullum*, here, Defendant not only failed to cite evidence of improved conditions but also failed to offer *any* basis for its 'about face.'") (emphasis in original).[2]

Unum offers little by way of response, suggesting without elaboration that "the record statement of Plaintiff's own treating physicians, IME physician Dr. Lin, and Unum consultants

---

[2] The opinion in *Farley* is unreported. A copy is attached hereto as Appendix A.

2

Dr. Fox and Dr. Norris constitute evidence of Plaintiff's improvement …." Unum Mem., ECF 19, PID 4300. In *Kramer*, however, the Sixth Circuit rejected Unum's contention that new opinions by reviewing physicians constituted evidence of improvement: "The best that can be said of the opinions of Dr. Mayer and the other company consultants is that they support the proposition that Dr. Kramer was, in fact, never disabled from her 'own occupation.'" *Kramer*, 571 F.3d at 507.

The same is true for Dr. Lin's opinion. He simply offered an opinion – albeit quite biased – about what Jalali could do today. Unum did not ask him whether he believed Jalali's condition had improved, and he did not offer such an opinion. Dr. Minard, by contrast, was specifically asked – with reference to a 2011 opinion by Dr. Robert Perkins – whether Jalali's condition had improved, and his response was categorical: "It is my opinion that Sepanta's lumbar condition has worsened mildly to moderately since Dr. Perkins' evaluation in 2011 as evidenced by her more recent MRI which showed worsening of findings at both L4-5 and L5-S1 level." ECF 13-8, PID 3754.

Unum's assertion that "the record statements of Plaintiff's own treating physicians" demonstrate that Jalali's medical condition has improved, ECF 19, PID 4300, was not supported by any citation to the record. And in fact, one searches the record in vain for any statement by any of Jalali's physicians that report that her condition is better now than it was in 2011.

Finally, the record contains Jalali's MRIs from 2010 and 2015. ECF 13-8, PID 3703-3710. The 2015 lumbar MRI describes the deterioration in Jalali's condition:

> L4-L5 disc desiccation. The disc has undergone <u>further dehydration</u> since the previous [2010] exam. Disc displacement is noted with a right foraminal disc-osteophyte complex with annular rent that extends from the right foramen into the right far lateral region. Facet arthropathy is present with moderate right and milder left foraminal stenosis. <u>Abutment of the right L4 nerve root</u> is present. No significant interval change is noted when comparison is made with the previous

3

> exam and the degree of right foraminal narrowing. Ligamentum flavum hypertrophy triangulating the central canal is present. This has been noted previously as well.
>
> L5-S1 left laminectomy. This represents an <u>interval change</u> from the previous examination. Disc desiccation. Broad-based protrusion more prominent central and paracentral with central and paracentral annular rents. The protruding disc barely <u>abuts the descending right S1 nerve root</u> and <u>abuts and displaces the descending left S1 nerve root</u>. The disc barely encroaches into the floor of the left foramen. The central and paracentral protrusion has a maximal AP dimension of 4 mm.

ECF 13-8, PID 3708-09 (emphasis added).[3]

Rather than address *these* MRI findings, Unum engages in a bit of misdirection, inviting the Court to consider essentially normal MRIs of the brain and *cervical* spine. Unum Mem., ECF 19, PID 4300. But Jalali has never claimed to be disabled by damage to her cervical spine or to her brain; Unum's discussion of them thus is nothing more than a reference to some "slivers of information that *could be* read to support a denial of coverage." *Godmar v. Hewlett-Packard Co.*, 631 F. App'x 397, 402–03 (6th Cir. 2015) (italics in original).

Jalali's disability has, from the beginning, been based on the damage to her *lumbar* spine caused by a car accident in 2007, now exacerbated by a 2015 car accident. There is no evidence in the record – none – that Jalali's condition has improved since this Court concluded that she was disabled from engaging in gainful employment. On this issue alone, Unum's decision to terminate Jalali's benefits was arbitrary and capricious.

II. **Based on an assessment of the quality and quantity of the evidence in the record, Unum's decision to terminate Jalali's disability claim was arbitrary and capricious.**

Unum's decision can be sustained only if it is "the result of a deliberate, principled reasoning process" *Shaw v. AT & T Umbrella Ben. Plan No. 1,* 795 F.3d 538, 547 (6th Cir.

---

[3] *Compare, e.g.,* ECF 13-8, PID 3707 (2010 MRI at L5-S1: "showing disc abutment to descending left S1 root but no impairment to S1 right nerve root).

2015), and is "supported by substantial evidence on the record as a whole." *Arruda v. Zurich Am. Ins. Co.*, 951 F.3d 12, 21 (1st Cir. 2020). "Substantial evidence is more than a scintilla," *General Med., P.C. v. Azar*, 963 F.3d 516, 520 (6th Cir. 2020), and an assessment of a decision's reasonableness necessarily requires an evaluation of "the quantity and quality of the medical evidence" in the record. *Shaw*, 795 F.3d at 547.

### A. Unum's evidence is deficient in both quantity and quality.

Unum's argument rests on three pieces of evidence: Dr. Natalie's check-mark opinion, Dr. Lin's medical evaluation, and Dr. Norris's file review.[4] None is persuasive.

### 1. Dr. Natalie's opinion cannot bear the weight that Unum places on it.

At the center of Unum's argument is its contention that Jalali's "physicians" do not believe she is disabled. Unum Mem., ECF 19, PID 4284 ("None of Plaintiff's treating physicians now support her disability claim and her primary treating provider has released her to full-time sedentary work.").

The only physician directly on record is Dr. Natalie. Unum sent him a letter briefly – and deceptively – describing sedentary work capacity, then asked Dr. Natalie if Jalali was able to perform those demands on a full-time basis. Dr. Natalie checked "yes." ECF 13-7, PID 3090.

The description in the letter was deceptive because Unum included within the definition of "sedentary" an "accommodation" provision: "Jobs are sedentary," Unum wrote, "if walking and standing are required only occasionally and all other sedentary criteria are met. <u>Ability to change positions as needed throughout the day</u>." ECF 13-7, PID 3090 (emphasis added).

But no recognized definition of "sedentary capacity" includes the accommodation provision underscored above. *See, e.g.,* 20 C.F.R. § 404.1567(a) ("Sedentary work involves

---

[4] Unum mentions other reviewers, including a Dr. Fox. But those reviewers appeared early in the claim and their opinions were offered without the benefit of all of the evidence, including, for example, the FCE. In any case, Unum did not rely upon the earlier reviewers in reaching its final decision.

lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."); UNITED STATES DEPARTMENT OF LABOR DICTIONARY OF OCCUPATIONAL TITLES ("Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.").[5]

Four other points about Dr. Natalie's check mark bear noting. First, Unum did not ask Dr. Natalie to explain why he thought Jalali could work, whether he believed Jalali's condition had improved, or why his opinion differed so markedly from Dr. Seeder's.[6]

It is also fair to suggest that had Dr. Natalie checked "no," Unum would have resisted accepting his opinion without a more detailed explanation. *See, e.g., Schussheim v. First Unum Life Ins. Co.*, 80 F. Supp. 3d 360, 381 (E.D.N.Y. 2015) ("First Unum wrote a letter to plaintiff supplementing its determination on administrative appeal, and advising plaintiff that it had not given greater weight to Dr. Haber's opinion because it was 'a conclusory statement.'").

Second, Dr. Natalie's check mark opinion necessarily gives way in the face of the far more objective and comprehensive functional capacity evaluation. The FCE concluded that Jalali "demonstrates sub-sedentary capacity as she is unable to perform all material handling

---

[5] https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOTAPPC
[6] Dr. Seder was Jalali's original treating physician. *Jalali v. Unum Life Ins. Co. of Am.*, No. 2:12-CV-00828, 2014 WL 1212708, at *2 (S.D. Ohio Mar. 24, 2014), dismissed (July 9, 2014) (*Jalali I*). *See also* Jalali Init. Mem., ECF 16, PID 4260. Dr. Seeder reported to Unum as far back as 2011 that "The assessment of tolerance for full time work capacity even in a sedentary capacity at this point probably requires a functional capacity evaluation – FCE." ECF 13-5, PID 2455. And nowhere in Dr. Seeder's records can be found any statement suggesting that he believed Jalali was capable of full-time work. *See also Jalali I* at *2 ("Dr. Seeder believed that Jalali could work a maximum of 4-6 hours per day."),

6

tasks with at least 10 lb. … [and] was also unable to tolerate uninterrupted sitting for more than approximately 20 minutes." ECF 13-8, PID 3558 (emphasis added)

Third, Dr. Natalie's check mark is simply inexplicable in the context of the entire record, which contains several of Dr. Natalie's own notes. In his note of October 27, 2017, for example, ECF 13-8, PID 3896, Dr. Natalie reported that Jalali presented with a flare up of her chronic pain, "Intermittent in time course. Burning in quality. A little higher up in the right lumbar spine on the right she also reports stabbing sensations 9/10 in severity. … Referral down the leg to the posterior thigh, lateral knee. Also with bottom of the right foot symptoms greater over the lateral aspect."

He noted, upon examination that Jalali experienced increasing "numbness feet right D2-3 and left D5" and "increased right sided low back pain, right lumbar paraspinal tenderness, +right seated SLR." A non-conflicted fiduciary reasonably would have asked a physician to reconcile these findings with a checkmark indicating that his patient could work full-time.

As the Sixth Circuit noted in a similar context, Dr. Natalie's check mark is so inconsistent with the other medical records "that it can best be described as aberrational." *Glenn v. MetLife*, 461 F.3d 660, 669 (6th Cir. 2006), *aff'd sub nom. Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008).

Finally, Unum's suggestion that Dr. Natalie later reaffirmed his opinion is based on a voice mail message left following a telephone call between a Unum employee and someone in Dr. Natalie's office. ECF 13-7, PID 3467. "Evidence" gleaned from a telephone conversation is notoriously unreliable. *See, e.g.*, *Haning v. Hartford Life & Accident Ins. Co.*, 140 F. Supp. 3d 654, 670 (S.D. Ohio 2015) ("Query also whether the 'evidence' obtained from a telephone conversation that Dr. Pelc summarized is reliable."); *Mitchell v. The Hartford*, No. 3:05CV-432-

7

H, 2006 WL 1548956, at *5 (W. D. Ky. June 2, 2006) ("[T]he use of quotes from telephone conversations raises even greater concerns. These statements are second hand and completely unverified. These circumstances lend themselves to a high probability of misuse."); *Cavaretta v. Entergy Corp. Companies' Benefits Plus Long Term Disability Plan*, No. CIV.A. 03-1830, 2004 WL 2694895, at *11 (E. D. La. Nov. 23, 2004) ("Twice, Hartford's consulting physicians provided opinions based upon phone conversations with Cavaretta's treating physicians that are unknown to the Court, except by written interpretations of these calls by Hartford's physicians."); *Id.* at * 21 ("The fact that plaintiff stated in a phone conversation that he would return to work to perform light duty does not necessarily make this veritable evidence upon which the Court can rely either."); *Blankenship v. Liberty Life Assur. Co. of Boston*, No. C-03-1132 SC, 2004 WL 1878211, at *10 (N.D. Cal. Aug. 20, 2004) *aff'd*, 486 F.3d 620 (9th Cir. 2007) ("Liberty also relies on a statement made by Dr. Thomas to Liberty's in-house nurse … There are several problems with this evidence. First, the evidence of this statement is second-hand and based on notes made by Liberty's own nurse after a phone call with Dr. Thomas. If Dr. Thomas believed that his patient was not disabled and told the insurer his opinion, it is difficult to understand why Liberty would not obtain an official opinion in writing.").

There was nothing arbitrary or capricious about Unum *initially* taking note of Dr. Natalie's opinion. But a "reasoned" *final* decision requires more than reflexively seizing on that evidence when more persuasive evidence points the other way. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987) ("Evidence is not substantial if it is overwhelmed by other evidence … or if it really constitutes not evidence but mere conclusion.").

8

### 2. Dr. Lin's opinion is not worthy of credit, and Unum acted arbitrarily and capriciously in relying on it.

There are several reasons why Unum acted arbitrarily in relying on Dr. Lin's opinion. First, as Jalali pointed out during her administrative appeal, Unum "stacked the deck" by the information it did – and did not – send to Dr. Lin. *Butler v. United Healthcare of Tennessee, Inc.*, 764 F.3d 563, 568 (6th Cir. 2014) ("United stacked the deck against the claim, instructing reviewers to 'disregard' the evidence that John submitted in favor of the 'contemporaneous physician-authored documents' that it had entered in the record." ).

Jalali wrote:

> Although Unum had a wealth of medical records it could have supplied to Dr. Lin, it sent him a single office note (from Dr. Leonard) that principally addressed a sprained ankle that Dr. Jalali suffered. Dr. Jalali does not claim to be disabled due to a sprained ankle, so one wonders why Unum thought that particular record would be important to Dr. Lin.
>
> Unum might have sent, instead, copies of Dr. Jalali's imaging studies from 2011 and 2015…. Or Unum might have sent him any of several other medical records where Dr. Jalali's spine (and not her ankle) were the subject of medical evaluation.
>
> Based on the information he received, Dr. Lin expected that he would be examining a patient with a bad ankle, not a patient with a 10-year history of spinal disease and pain.

ECF 13-8, PID 3746.[7]

In her appeal, as well as in her opening brief, Jalali also challenged the factual basis for Dr. Lin's opinion, contending that he did not perform many of the tests that he said he did. Jalali Init. Mem., ECF 16, PID 4251-4253. Unum ignored her challenge during its review of her appeal, and in its memorandum in this Court, Unum dismissed it because, *inter alia*, Jalali's

---
[7] The information Unum sent to Dr. Lin was specifically identified in the record. ECF 13-8, PID 3580-3644. It consists of several pages of Unum narrative, Dr. Natalie's check mark, a list of prescription medications, two office visit notes and an ankle x-ray. None of the lumbar MRIs were included.

9

medical license has lapsed. Unum Mem., ECF 19, PID 4295, n. 3. It does not require a medical license to know that Dr. Lin lied about a test he did not perform.

Dr. Minard pointed out in his own opinion that Dr. Lin purported to rely on Waddell's signs, which the legitimate medical establishment had rejected decades ago. Jalali Init. Mem., ECF 16, PID 4255.

And Mr. Secrest observed that Dr. Lin's opinion could not be squared with the findings of the FCE. Jalali Init. Mem., ECF 16, PID 4254 (discussing the implausibility of Dr. Lin's conclusion that Jalali sat comfortably throughout his interview with her).

Finally, the language on Dr. Lin's web site cannot be ignored: "[W]e view our role in the insurance marketplace <u>as your partner.</u> … We regularly partner with … insurance companies … to provide the medical expertise needed to effectively … <u>reduce costs</u> and avoid and <u>contain litigation</u>." Jalali Init. Mem., ECF 16, PID 4268-4269, quoting ECF 13-8, PID 3800 (emphasis added).

Unum has never addressed Dr. Lin's obvious bias.

### 3. Dr. Norris's file review is not worthy of credit, and Unum acted arbitrarily and capriciously in relying on it.

Unum neglects to note that Dr. Scott Norris, the third physician upon which it relies, is a Unum employee. At the outset, therefore, the Court should view his opinion with a measure of skepticism. *Moon v. Unum Provident Corp.*, 405 F.3d 373, 381–82 (6th Cir.2005) ("[W]hen a plan administrator's explanation is based on the work of a doctor in its employ, we must view the explanation with some skepticism.").

There are, moreover, five fundamental problems with Dr. Norris's opinion. <u>First</u>, Dr. Norris doubted the credibility of Jalali's complaints. *E.g.*, ECF 13-9, PID 4007 ("Examination findings were not [consistent with] the severe level of impairment as reported by the

10

[employee]."). This circuit has held, time and again, that a file review that challenges a claimant's credibility is not worthy of credit. *See, e.g., Okuno v. Reliance Standard Life Ins. Co.*, 836 F.3d 600, 610 (6th Cir. 2016); *Shaw*, 795 F.3d at 550.

Second, as a file reviewer, Dr. Norris was <u>required</u> to accept as valid the conclusions of the functional capacity evaluation. *Meyer v. Metro. Life Ins. Co.*, 341 F. Supp. 2d 865, 872 (S.D. Ohio 2004) ("a non-examining physician is limited to reviewing <u>and accepting</u> documented findings and testings"). And it is beyond debate that a functional capacity evaluation provides the best evidence of a claimant's physical capacity. *Shaw*, 795 F.3d at 548 ("A functional capacity evaluation is generally a reliable and objective method of gauging the extent one can complete work-related tasks.") (citation and quotation omitted). *See also Brooking v. Hartford Life & Acc. Ins. Co.*, 167 F. App'x 544, 549 (6th Cir. 2006) ("Hartford Life's failure to account for such objective evidence [an FCE] further supports our conclusion that its decision is arbitrary and capricious.").

<u>Third</u>, Dr. Norris's opinion is internally inconsistent. At one point he said he was rejecting the findings of the FCE because they were inconsistent with Dr. Lin's conclusion. ECF 13-9, PID 4006 ("The … examination findings noted in the July 2018 … FCE … were not consistent with … the Jan 2018 IME."). But at another point, ECF 13-9, PID 4007, he endorsed the FCE because Jalali's "performance during the FCE and the [restrictions and limitations] specified by OT Secrest were [consistent with] the occupational duties [of a sedentary job]."[8]

<u>Fourth</u>, Dr. Norris's justification for rejecting the FCE and Dr. Minard's opinion is that they differ from Dr. Lin's. ECF 13-9, PID 4006. *But that was the point of submitting them*.

---

[8] The latter opinion is clearly cherry-picking, mining the FCE report for some "sliver" of information to justify terminating benefits.

Because Dr. Lin's review was so obviously biased, Jalali submitted (through Dr. Minard and Mr. Secrest) objective medical evidence of her own to rebut Dr. Lin's opinion. So it is no answer for Dr. Norris to say that he rejected them because they disagreed with Dr. Lin.[9]

What Dr. Norris does not explain is <u>why</u> he chose to credit Dr. Lin's opinion over Dr. Minard's and the FCE. The only answer that comes to mind is that Dr. Lin's opinion justified Unum's pre-determined conclusion: that Jalali's benefits should be terminated.

<u>Fifth</u>, Dr. Norris concluded that Jalali could engage in sedentary work based upon "her reported activities," of which Dr. Norris listed three: (1) she returned to work as an instructor at a community college; (2) she completed an MBA; and (3) she has two young children. ECF 13-9, PID 4008.

The Court rejected Unum's community college argument in *Jalali I*.

Jalali told Unum in 2012 that she was taking online courses, ECF 13-5, PID 2344, and she told Unum that she had obtained her degree in 2014, ECF 13-6, PID 3036, both of which predate by several years Unum's decision to terminate her claim.

The third "activity," that Jalali has two children, is simply offensive.[10] If Jalali had been a man, would the fact that "he" has young children be relevant? What is the underlying message here?

Dr. Norris's gender bias is palpable and should be condemned. *Cf. Wilson v. Gregory*, 3 F.4th 844, 863 (6th Cir. 2021) (Stranch, J., concurring) ("I remark upon this term not only to encourage reflection on the import and not-so-hidden meanings of the words we choose but

---

[9] Dr. Norris also said he rejected the FCE because it occurred later in time than did Dr. Lin's evaluation. ECF 13-9, PID 4006 ("I give little weight to these findings compared to the more proximate IME …"). But Dr. Norris does not explain why, in a disability claim spanning more than 10 years, Dr. Lin's report (dated January 2, 2018) is more probative than Dr. Minard's (dated October 4, 2018) or the FCE (dated July 10, 2018).
[10] Unum also mentions Jalali's children at other points in its opening memorandum.

12

because Deputy Gregory's description of Mrs. Huelsman specifically as 'hysterical' tells us something useful about how he evaluated Mrs. and Mr. Huelsman's respective demeanors. <u>This case also tells us something useful about the harm that can flow from these kinds of unconscious or unconsidered conclusions</u>.") (emphasis added).[11]

"That reviewing physicians paid by or contracted with the insurer agree with its decision … does not prove that the insurer reached a reasoned decision supported by substantial evidence. The physicians' opinions carry weight only to the extent they provide a <u>fair</u> opinion applying the standard for granting benefits to the facts of the case." *Butler*, 764 F.3d at 569 (emphasis added).

**B. Jalali's evidence, by contrast, is far superior in both quality and quantity.**

In her opening memorandum, Jalali set out in some detail the more recent evidence supporting her claim. Jalali Opening Mem., ECF 16, PID 4254-4256. The evidence includes the FCE, Dr. Minard's independent medical examination, and Mr. Atkinson's report.

But the "whole record" contains much more. It runs to more than 4000 pages[12] and includes reports of Jalali's first and second car accidents. It includes multiple MRIs dating back more than 10 years, and it includes multiple statements from Dr. Lewis Seeder, who managed Jalali's care until he retired.

In the absence of any evidence that Jalali's condition has changed in the intervening time, Dr. Perkins' opinion (which is also part of the "whole" record and which he wrote *at Unum's request*) bears repeating: "At this time I do not feel this patient can perform full-time sedentary type duty." ECF 13-5, PID 2143. And, as Dr. Minard concluded, "It is my opinion that Sepanta's lumbar condition has worsened mildly to moderately since Dr. Perkins' evaluation in

---

[11] Dr. Norris also disparaged Jalali's affidavit as "undated and unsigned." That is incorrect. ECF 13-8, PID 3829-3830.
[12] The Administrative Record filed by Unum begins at ECF 13-1, PID 39, and ends at ECF 13-9, PID 4233.

13

2011 as evidence by her more recent MRI which showed worsening of findings at both L4-5 and L5-S1 level. This is not unexpected. This is in fact the normal and expected natural history of such injuries." ECF 13-8, PID 3754.

The record as a whole, and particularly considering the quality and quantity of the evidence, demonstrates that Jalali remains disabled and entitled to benefits. Unum's decision to the contrary was arbitrary and capricious.

III. **Unum improperly imported an accommodation provision into its disability determination.**

In her opening memorandum, Jalali argued that Unum had improperly imported an accommodation provision into its policy. Unum claims, in response, that it is permitted to import an accommodation provision into the language of its plan, ECF 19, PID 4303-4305, but Unum's response ignores cases like *Shaw*, where the plan expressly permitted consideration of "reasonable accommodation." Jalali Mem., ECF 16, PID 4263. If a plan is always entitled to consider accommodations, then the language in *Shaw* is redundant.

To put it another way, if Unum had wanted its definition to incorporate reasonable accommodations, it could have written its policy that way. *See also Jalali I* at *5, citing S*affle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 459–460 (9th Cir.1996); *Pelchat v. UNUM Life Ins. Co. of Am.*, No. 3:02–CV–7282, 2003 WL 21105075 at *11 (N.D. Ohio Mar.25, 2003) ("Defendant's interpretation would have the court read the Plan's termination requirement as 'when you are able to work in any occupation on a part-time basis.' But as an administrator, Defendant lacks discretion to rewrite the Plan.").

*Bustetter v. Standard Ins. Co.*, No. CV 18-1-DLB-EBA, 2021 WL 1198305, at *9 (E.D. Ky. Mar. 29, 2021), is particularly inapposite because the court determined that the individual

14

who conducted the FCE in that case failed to consider the possibility of accommodations. Here, both the FCE examiner, Mr. Secrest, and the vocational expert, Mr. Atkinson, opined that Jalali's limitations <u>could not be accommodated</u>. ECF 13-8, PID 3558 (Secrest); PID 3763 (Atkinson).

It was arbitrary and capricious for Unum to assume, without evidence, that Jalali's limitations could be accommodated.

**IV.  The record supports the inference that Unum's conflict of interest played a significant role in its decision.**

Unum contends that Jalali lacks "concrete evidence" to support her contention that Unum's conflict of interest infected its decision. Unum Mem., ECF 19, PID 4310. But the evidence is in the record for anyone to see, and one need look no further than Dr. Lin.

He advertised on his web site that he was biased – that he would "partner" with Unum to help Unum make its claims decisions defensible. And he rendered an opinion that did just that.

In her administrative appeal, Jalali noted the bias reflected by Dr. Lin's website. She attacked the quality of Dr. Lin's opinion. She reported several instances where he lied about the nature of his examination. Dr. Minard pointed out that no reputable examiner uses Waddell's signs anymore. And Mr. Secrest demonstrated the impossibility of Dr. Lin's "observations" in light of the FCE.

Jalali pointed out all of this in her administrative appeal. ECF 13-8, PID 3746-3749. While a disinterested fiduciary surely would have then questioned the reliability and validity of Dr. Lin's opinion, Unum did not. It ignored the challenges, continued to rely on Dr. Lin's opinion, and denied Jalali's appeal.

Second, the Court might recall, in *Jalali I*, that Unum justified its decision to terminate Jalali's benefits at that time based on a letter it had not yet received:

> Defendant's records clearly indicate that it had taken an adverse decision regarding Plaintiff's LTD benefits at some time before February 27, 2012—at least two days before receiving Dr. Seeder's opinion of Plaintiff's physical capacity. Defendant's use of Dr. Seeder's opinion—never actually stated by him in any of the documents in the record, but simply passed on by an assistant—is a *mere post hoc* rationalization of a decision to terminate Plaintiff's LTD benefits made well before February 29, 2012. As such, Defendant's arguments are entitled to little weight.

*Jalali I*, at *5.

These two sets of "concrete" facts, one set from this case and one set from *Jalali I*, are more than sufficient for the Court to conclude that Unum's conflict of interest infected its decision-making.

## V. The Court should forbid Unum from terminating Jalali's benefits again absent compelling evidence that her condition has improved.

Unum correctly observes that the Sixth Circuit has not issued an opinion supporting Jalali's argument that Unum's continuous and systematic efforts to terminate her disability claim justifies the extraordinary remedy Jalali requests in this case. But neither has the Sixth Circuit ever rejected Jalali's argument.

What the Sixth Circuit has said is that this Court has discretion to fashion appropriate relief, *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 621 (6th Cir. 2006), and the facts of this case call for more than merely reinstating Jalali's benefits. Otherwise, Unum will simply commission another physician like Dr. Lin to conduct another biased examination, and Jalali will lose her benefits again.

The district courts in *Gorena v. Aetna Life Ins. Co.*, No. C17-532 MJP, 2018 WL 3008873 (W.D. Wash. June 15, 2018), *Foust v. Lincoln Nat'l Life Ins. Co.*, 416 F. Supp. 3d 1319 (D. Utah 2019), and *Medefesser v. Metro. Life Ins. Co.*, No. 6:18-CV-00041-MK, 2019 WL 6481794 (D. Or. Sept. 5, 2019), report and recommendation adopted, No. 6:18-CV-00041-MK,

16

2019 WL 6467818 (D. Or. Dec. 2, 2019), concluded that the insurers in those cases had so abused the claims process that relief beyond merely a reinstatement of benefits was warranted. So too here. Unum should be directed to pay Jalali's claim to the policy's maximum benefit duration absent a showing of improvement in her medical condition.

## CONCLUSION

The evidence establishes that Jalali remains disabled and unable to engage in gainful employment. The Court should grant Jalali's Motion for Judgment on the Administrative Record and should enter an order directing Unum to reinstate Jalali's benefits retroactively, plus interest, and to continue to pay her claim to age 65, absent reasonable and objective evidence that Jalali's medical condition has improved.

Respectfully submitted,

   /s/ Tony C. Merry
Tony C. Merry    (0042471)
Trial Attorney
Law Offices of Tony C. Merry, LLC
7100 N. High Street, Suite 302
Worthington, Ohio 43085
(614) 372-7114
(614) 505-6109 [fax]
tmerry@tmerrylaw.com
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was filed via the Court's Electronic Filing System and intended to be served upon all counsel of record via the Court's electronic mail system this 22nd day of October 2021.

                                                        /s/ Tony C. Merry
                                                        Tony C. Merry     (0042471)