IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SEPANTA JALALI, | ) | CASE NO.: 2:20-cv-5071 |
| | ) | |
| Plaintiff, | ) | JUDGE MARBLEY |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DEAVERS |
| | ) | |
| UNUM LIFE INSURANCE COMPANY | ) | **DEFENDANT'S REPLY BRIEF** |
| OF AMERICA, | ) | **IN SUPPORT OF ITS MOTION FOR** |
| | ) | **JUDGMENT ON THE** |
| Defendant. | ) | **ADMINISTRATIVE RECORD** |

## INTRODUCTION

In asking this Court to continue her disability benefits, Plaintiff Sepanta Jalali relies more on conjecture than record evidence.[1] Because she chose not to pursue discovery, she can only speculate—without basis—that Unum Life Insurance Company of America denied her claim out of self-interest. Moreover, although she repeatedly emphasizes that the Court "once before" reinstated her benefits, there is no dispute that, unlike the clinical record from 9 years ago, she no longer has any treating provider supporting her claim; her primary provider affirmatively stated that she could perform a full-time, sedentary position; Plaintiff participated in an independent medical exam ("IME") at Unum's request; and the IME physician as well as Unum's physician consultants agreed that she could perform a full-time, sedentary position.

Plaintiff concedes that the arbitrary-and-capricious standard of review governs this case, and Unum's decision easily withstands that deferential standard. As explained below, because the record confirms that Unum acted reasonably in discontinuing Plaintiff's benefits, Unum

---

[1] The parties agree that, because this lawsuit arises under Group Policy No. 503126 (the "Policy," Record at Page ID# 138–78), the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, governs this denial-of-benefits claim.

respectfully requests that the Court grant Unum's motion for judgment, deny Plaintiff's corresponding motion, and dismiss Plaintiff's lawsuit, with prejudice.

## LAW AND ARGUMENT

**I.** **The Clinical Record Demonstrates That Plaintiff's Condition Improved and, More Importantly, Confirms That Unum Had a Rational Basis to Discontinue Benefits.**

Although Plaintiff claims that there is no record evidence that her condition improved after Unum reopened her claim in April 2014, Unum relied on a very different clinical record when it discontinued benefits in February 2018. But before addressing that evidence, it is worth noting that, although Plaintiff continues to imply that it is arbitrary to discontinue benefits absent evidence of improvement, citing *Kramer v. Paul Revere Life Insurance Company*, 571 F.3d 499 (6th Cir. 2009), the Sixth Circuit specifically held that *Kramer* "is not . . . a wholesale endorsement of the notion that a lack of evidence of improvement is sufficient unto itself to prove a plan administrator's decision arbitrary and capricious." *Morris v. Am. Elec. Power Long-Term Disability Plan*, 399 F. App'x 978, 984 (6th Cir. 2010). As the *Morris* Court emphasized, the *Kramer* decision "coupled the absence of such evidence with a lack of explanation or support for the plan's decision, among other factors." *Id.* Plaintiff's case law simply reinforces the basic point that "the plan administrator must have some reason" for discontinuing benefits. *E.g.*, *McCollum v. Life Ins. Co. of N. Am.*, 495 F. App'x 694, 704 (6th Cir. 2012); *see Caesar v. Hartford Life & Acc. Ins. Co.*, 464 F. App'x 431, 436 (6th Cir. 2012) (same).

Although the clinical record here documents Plaintiff's medical improvement, even more importantly, it resolves "the ultimate question" at issue because it demonstrates that Unum had a "rational basis" for concluding that Plaintiff "was not disabled at the time of the new decision." *Morris*, 399 F. App'x at 984; *see Shields v. Reader's Digest Ass'n, Inc.*, 331 F.3d 536, 541 (6th Cir. 2003). In direct contrast to the unreported *Farley* decision cited by Plaintiff (Doc. 29-1),

none of Plaintiff's treating providers now support her disability; Plaintiff's primary treating provider agreed without any rebuttal on appeal that she could perform a full-time, sedentary position; and both an IME physician as well as Unum's physician consultants agreed that she could perform a full-time, sedentary position. Further, as explained in more detail below, Plaintiff's efforts to downplay the clinical record on which Unum relied are unpersuasive.

First, Plaintiff misreads the *Kramer* decision when she claims that the Sixth Circuit rejects the opinions of physician consultants as evidence to support discontinuing benefits. The *Kramer* Court chose not to rely on the consultants in that case because it found "no explanation for the decision to cancel benefits" and their conclusions "flie[d] in the face of all the other evidence in the record." 571 F.3d at 507. Here, Plaintiff's treating physiatrist James Natalie, M.D., and her treating neurologist James Barfield, M.D., both found no work restrictions or limitations (Record at Page ID# 3090–92, 3465–67), and Unum's physician consultants— William B. Fox, M.D.,[2] and Scott B. Norris, M.D.—reached the **same conclusion** based on the clinical record (*id.* at Page ID# 3331–35). For example, Dr. Fox noted that diagnostic images from 2015 "do not support the presence of a severe spine condition and a loss of exertional work capacity," and that while the imaging suggested the potential for neural compromise and degenerative changes typical with aging, "recent examinations have not documented gait, sensory, reflex or motor deficits," and she appeared in no acute distress during office visits. (*Id.* at Page ID# 3274–75, 3333.) For his part, Dr. Norris pointed out that the diagnostic imaging did not reveal structural disease or pathologic conditions consistent with severe functional loss, and that Plaintiff's modest intensity of treatment did not suggest less than sedentary capacity. (*Id.* at

---

[2] Potentially because she cannot dispute that Dr. Fox pointed to evidence of Plaintiff's improved condition, Plaintiff claims that Unum did not rely on his opinion; but the record confirms that Unum cited Dr. Fox's report in both denial letters. (Record at Page ID# 3483–84, 4043.)

Page ID# 4005–09.) In light of that evidence, and given that Plaintiff's own providers no longer supported her disability, Unum reasonably relied on the reports of its physician consultants.

Second, although Plaintiff claims that the Court should reject the opinion of IME physician Eugene Lin, M.D., because Dr. Lin addressed Plaintiff's condition as of his January 2018 exam (*id.* at Page ID# 3443–48), as opposed to whether her condition had improved relative to a 2011 IME, Plaintiff offers no case law that requires an IME physician to compare a claimant's condition to a prior exam from several years earlier. And, in any case, Dr. Lin referenced treatment notes from Plaintiff's former physiatrist, Lewis Seeder, M.D., who treated Plaintiff at the time of the 2011 IME; treatment notes from Dr. Natalie and other providers from the prior 3 years that identified largely normal physical findings;[3] and the 2015 diagnostic studies, which included the MRI of the lumbar spine. (*Id.* at Page ID# 3443.) In fact, although Plaintiff suggests that Dr. Lin did not properly consider the diagnostic evidence, Dr. Lin referenced the 2015 MRIs and stated that, while the findings would contribute to decreased range of motion, the lack of clinically verifiable radicular complaints, including negative lumbar provocative tests, indicated full-time, sedentary capacity. (*Id.* at Page ID# 3444–48).

Third, the record confirms that, contrary to Plaintiff's assertion otherwise, Unum specifically addressed Plaintiff's 2015 lumbar spine MRI.[4] As an initial matter, as Plaintiff herself acknowledges, the exam findings state that, with respect to the L4-L5 disc, there was "[n]o significant interval change" compared with the previous exam and, the L5-S1 disc "barely" abuts the descending right S1 nerve root. (*Id.* at Page ID# 3170.) Notably, Plaintiff does not

---

[3] These physical findings included negative bilateral straight leg raises; normal strength and sensation; a lack of radicular findings in the lower extremities; full hip, knee, and lumbar range of motion; normal gait; and no weakness in the arms or legs. (Record at Page ID# 3444–46.)

[4] Plaintiff concedes that the MRIs of the brain and cervical spine that Dr. Natalie ordered in 2015 resulted in "essentially normal" findings. (Pl's Opp. Br. at Page ID# 4337.)

discuss how any of the 2015 lumbar MRI findings would affect her functional capacity. By contrast, as discussed above, Dr. Fox, Dr. Norris, and Dr. Lin each concluded that the findings in the 2015 lumbar MRI did not definitively establish any disabling restrictions in light of the record as a whole. (*Id.* at Page ID# 3274–75, 3333, 3447–48, 4005–09.) Further, Dr. Natalie, who ordered the imaging and reviewed the results, does not support Plaintiff's disability claim. (*Id.* at Page ID# 3090–92.) In sum, Unum had reliable clinical evidence that Plaintiff's medical condition improved and—more importantly for purposes of this Court's review—a reasonable basis to discontinue benefits. *See Shields*, 331 F.3d at 541.

## II.    <u>The Quality and Quantity of the Record Evidence Supports Unum's Decision.</u>

Plaintiff next argues, without basis, that the "quality and quantity" of the medical evidence favor her position. *Shaw v. AT&T Umbrella Benefit Plan No. 1*, 795 F.3d 538, 547 (6th Cir. 2015). But the *Shaw* decision cited by Plaintiff merely reinforces the reasonableness of Unum's decision. In *Shaw*, the Court concluded that the defendant plan acted arbitrarily in denying benefits where it ignored the evidence of treating physicians, failed to conduct its own physical examination, and relied on a consultant physician that it "repeatedly retained" and whose conclusions had been questioned in "numerous federal cases." *Id.* at 547, 551. This case presents the entirely opposite record. Here, Plaintiff points to no treating provider that supports her disability claim; she participated in a physical examination with an IME physician (Dr. Lin); and she sought no discovery and offers no evidence to undermine the credibility of the two physician consultants (Dr. Fox and Dr. Norris) that reviewed her clinical record. The Policy requires that Plaintiff submit proof of her disability, and she cannot carry her burden here. *E.g.*, *Gilewski v. Provident Life & Acc. Ins. Co.*, 683 F. App'x 399, 406 (6th Cir. 2017); *see Farhner*

*v. United Transp. Union Discipline Income Prot. Program*, 645 F.3d 338, 343 (6th Cir. 2011) (noting that a plaintiff bears the burden of proving the insurer's decision arbitrary or capricious).

**A.** **Unum Reasonably Relied on the Opinions of Plaintiff's Treating Providers, an IME Physician, and its Physician Consultants.**

**1.** **None of Plaintiff's Treating Providers Support Her Claim.**

Plaintiff cannot avoid the fact that, despite the assistance of counsel, she could not secure the support of any of her treating providers when appealing Unum's decision to discontinue her disability benefits. In fact, although she obtained a functional capacity evaluation ("FCE"), an IME, and a vocational report from three separate consultants for her administrative appeal, she did not provide a statement identifying any restrictions from any of her treating physicians. Given that her primary treating provider (Dr. Natalie) expressly stated that she could perform full-time, sedentary work—and an IME physician (Dr. Lin) and two of Unum's physician consultants (Dr. Fox and Dr. Norris) agreed—Unum had a "reasonable explanation" for its decision. *Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 308 (6th Cir. 2010); *see McDonald v. W.-Southern Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003) ("Generally, when a plan administrator chooses to rely upon the medical opinion of one doctor over that of another . . . the plan administrator's decision cannot be said to have been arbitrary and capricious.").

In an attempt to minimize this point, Plaintiff first claims, against the evidence, that the "only physician directly on record is Dr. Natalie." (Pl's Opp. Br. at Page ID# 4338.) But the record confirms otherwise. In fact, Plaintiff's counsel submitted records from her family practice physician Steven Leonard, M.D., and orthopedic surgeon Joseph F. Wilcox, M.D., in support of her appeal, and informed Unum during the administrative process that Plaintiff treated with neurologist Dr. Barfield for migraines after her second car accident in 2015. (Record at Page ID# 3242, 3554–3746, 3828–30.) Importantly, although Plaintiff raised her treatment with each of

these physicians when Unum administered her claim, she does not point to their office notes now, or offer any statement from her treating providers that supports restrictions on her behalf. In fact, Dr. Barfield's notes confirm that Plaintiff's migraines improved after Botox injections, and he specifically declined to provide any restrictions. (*Id.* at Page ID# 4005–06.)

Rather than addressing the fact that she has no treating provider supporting her disability, Plaintiff tries to cast doubt on Dr. Natalie's statement that she could perform full-time, sedentary work by arguing that Unum's letter seeking Dr. Natalie's opinion improperly included the "[a]bility to change positions as needed throughout the work day" among the occupational demands. (*Id.* at Page ID# 3090.) Notably, Plaintiff does not criticize the physical exertion criteria cited by Unum, but only that Unum asked Dr. Natalie to assess whether Plaintiff could "change position as needed." As explained later, although the ability to change positions is not part of the definition of "sedentary capacity," Unum can consider accommodations in the context of determining disability. And Plaintiff's argument only highlights that Dr. Natalie felt she could change position as needed, and that he did not rebut that opinion on appeal.

Plaintiff's other attempts to undermine the opinion of her own treating physiatrist are likewise unavailing. First, Plaintiff takes issue with the fact that Unum did not ask Dr. Natalie to elaborate on why he felt she could perform full-time, sedentary work, or explain why his conclusion differed from Dr. Seeder, who last treated Plaintiff in 2015. But Dr. Natalie did not qualify his statement, which he signed and dated on May 31, 2017, and Unum did, in fact, follow up with phone calls in February 2018, at which time Dr. Natalie's office confirmed that his opinion remained unchanged. (*Id.* at Page ID# 3465, 3467.) Nothing about Dr. Natalie's opinion invited any further inquiry, and Plaintiff does not explain why Dr. Seeder, who retired years earlier, should factor in Unum's consideration when Dr. Natalie had been Plaintiff's primary

7

treating provider for almost 2 years. (*See id.* at Page ID# 3239.) She likewise does not explain why she did not simply ask Dr. Natalie to issue a corrected opinion if he supported her claim.[5]

Second, in a twist of convention, Plaintiff argues that the opinion of her own treating provider "necessarily gives way" to the "far more objective and comprehensive" FCE that she secured for her administrative appeal. Typically, courts question whether "the findings and opinions of [a claimant's] treating medical provider have been ignored or not given proper weight in comparison with those of a one-time IME," *Farr v. Hartford*, 564 F. Supp. 2d 1255, 1263 n.4 (D. Kan. 2008), but Plaintiff asks this Court to credit the one-time FCE conducted by Scott Secrest, MS, OT/L, over the opinions of providers like Dr. Barfield and Dr. Natalie, who treated her from 2015 onward. Although Unum explains its review of the FCE below, if Dr. Natalie, Dr. Barfield, Dr. Leonard, or Dr. Wilcox supported her claim, Plaintiff presumably would have submitted those statements on appeal, rather than the reports of outside consultants.

Third, Plaintiff tries to discredit Dr. Natalie's opinion in May 2017 that she could perform full-time, sedentary work because, in October 2017, Dr. Natalie noted that she had a "flare up" of right low back pain during a repeat lumbar epidural steroid injection ("ESI"), the last of which resulted in "greater than 50% reduction in pain that lasted over 3 months." (Record at Page ID# 3896.) Notably, Dr. Natalie expressed optimism about Plaintiff's response to lumbar ESIs, identified "[n]o evidence for progressive radiculopathy on examination," and made no statement as to Plaintiff's ability to work. (*Id.*) The fact that none of Plaintiff's treating physicians support her claim distinguishes her situation from *Glenn v. MetLife*, 461 F.3d 660

---

[5] Plaintiff speculates that, if Dr. Natalie had indicated that Plaintiff could not perform a full-time, sedentary job, "Unum would have resisted accepting his opinion without a more detailed explanation." (Pl's Opp. Br. at Page ID# 4339.) But, as explained in its briefing, Unum requested file reviews as well as an in-person IME, and there is ample record support to corroborate the opinions of Plaintiff's treating providers that she could perform full-time, sedentary work.

(6th Cir. 2006), where the claimant's treating physician offered two letters to correct a prior statement that the claimant could work a sedentary occupation. *Id.* at 669. Here, Dr. Natalie has provided no such statement, and nothing about the October 2017 office note related to Plaintiff's "flare up" undermines his May 2017 opinion that she could perform full-time, sedentary work.

Fourth, Plaintiff claims without basis that Unum accepted unreliable evidence because Dr. Natalie's office confirmed his opinion of Plaintiff's sedentary capacity by voicemail. (*Id.* at Page ID# 3465, 3467.) Her case support, however, is distinguishable. For example, in *Haning v. Hartford Life and Accident Insurance*, 140 F. Supp. 3d 654 (S.D. Ohio 2015), this Court found a telephone interview by a physician consultant to be of "limited value" because the physician could not glean "physical indicia" of the claimant's mental illness, including "her affect, her motor movement, her posture, her clothing, and her hygiene." *Id.* at 670. The situation here did not require "physical indicia" of disability; Unum simply wanted to confirm an already existing, unqualified statement from Dr. Natalie. Further, the unpublished cases from other courts that Plaintiff cites are likewise inapposite because they involve situations where "the sole evidence" of a treating physician's opinion consisted of a summarized phone conversation. *Cavaretta v. Entergy Corporation Companies' Benefits Plus Long Term Disability Plan*, No. 03-1830, 2004 U.S. Dist. LEXIS 23791, at *19 (E.D. La. Nov. 22, 2004); *see Mitchell v. Hartford*, No. 3:05-cv-432, 2006 U.S. Dist. LEXIS 37350, at *13–14 (W.D. Ky. June 6, 2006) (involving "completely unverified" quotes from calls with treating providers); *Blankenship v. Liberty Life Assurance Company*, No. C-03-1132, 2004 U.S. Dist. LEXIS 17116, at *30–31 (N.D. Cal. Aug. 20, 2004) (involving a call not corroborated by "an official opinion in writing"). Here, unlike the cited cases, the voicemail from Dr. Natalie's office corroborated an earlier, unequivocal statement signed and dated by Dr. Natalie. And even Plaintiff concedes there was "nothing arbitrary or

capricious" about Unum relying on that written statement. Unum had no reason to reject Dr. Natalie's opinion, particularly when Plaintiff had "every opportunity to rebut" that belief by securing a corrected statement on appeal. *See Mitchell*, 2006 U.S. Dist. LEXIS 37350, at *13–14.

##### 2.     Unum Reasonably Relied on Dr. Lin's Opinion as an IME Physician.

Plaintiff next takes issue with Dr. Lin, the physician that conducted her IME on January 2, 2018, at Unum's request. Although Plaintiff argues that Unum "stacked the deck" against her by not sending Dr. Lin the entire administrative record, she offers no case law to suggest that a physician conducting an in-person physical exam (as opposed to a file review) must review the entire record in advance. And, in any case, contrary to Plaintiff's assertions, Unum provided Dr. Lin treatment notes from the prior year, detailed summaries of medical records dating back to 2015, and the findings of the 2015 imaging studies, including the November 2015 MRI of the lumbar spine. (Record at Page ID# 3443–46, 3581–644, 4043.) Although Plaintiff claims that the records suggest she had ankle issues rather than spinal pain, Dr. Lin acknowledged that Plaintiff predicated her claim on low back pain, and he pointed to the findings of the lumbar MRI, Dr. Natalie's review of the 2015 MRIs, the notes related to lumbar ESIs, and physical findings (including lumbar spine findings) from visits dating back to 2015. (*Id.*) This is not a case like *Butler v. United Healthcare of Tennessee, Inc.*, 764 F.3d 563 (6th Cir. 2014), where the insurer instructed reviewers to "disregard" evidence submitted by the claimant. *Id.* at 568. In fact, Plaintiff does not point to any missing information that would have impacted Dr. Lin's analysis.

Although Plaintiff likewise challenges Dr. Lin's findings based on her own affidavit,[6] she fails to acknowledge that Dr. Lin's clinical findings comport with the findings of her own

---

[6] Although Unum noted that Plaintiff's medical license had lapsed and she only completed a few months of her family medicine residency, those points served as an aside to Unum's larger argument that Dr. Lin supported his findings with reference to his own clinical exam and the

treating physicians. Although Unum refers the Court to its initial brief for a full discussion of Dr. Lin's IME report, it is worth repeating that, although Plaintiff criticizes Dr. Lin's single mention of Waddell's signs, he did not reference Waddell's signs in his conclusions, but emphasized Plaintiff's lack of radicular symptoms on physical exam, negative lumbar provocative tests, observed functional transfers and sitting tolerance, the resolution of her headaches, and the management of her cervical conditions through medication. (Record at Page ID# 3447–48.) Moreover, Unum's physician consultant (Dr. Norris) concluded that Mr. Secrest's FCE findings were inconsistent with "contemporaneous examinations by treating physicians." (*Id.* at Page ID# 3578.) And although Plaintiff repeatedly describes Dr. Lin as biased because he works with Disability & Occupational Consultants ("DOC"), there is nothing inherently anti-claimant about working with an IME provider. Significantly, Plaintiff did not seek discovery related to her allegation of bias, and speculation alone is not a sufficient basis to reject Dr. Lin's IME findings.

### 3. Unum Reasonably Relied on its Physician Consultants.

There is likewise no merit to Plaintiff's argument that Unum unreasonably relied on its physician consultants, Dr. Fox and Dr. Norris. As an initial matter, although Plaintiff passes over Dr. Fox's October 11, 2017 report as "early in the claim"[7] (Pl's Opp. Br. at Page ID# 4338 n.4), Unum relied on Dr. Fox's report when it discontinued benefits on February 14, 2018, noting, among other points, that the clinical record did not document significant musculoskeletal or neurologic deficits, that Plaintiff did not participate in a comprehensive pain management program or physical therapy, and that her daily activities appeared in excess of the physical

findings of Plaintiff's treating physicians. Further, although Plaintiff later criticizes Dr. Norris for describing her affidavit as "undated and unsigned," her counsel conceded during the appeal that the version first circulated was unsigned. (Record at Page ID# 3828.)

[7] There is some irony in that position, given Plaintiff's repeated efforts to highlight an IME report from 2011 and diagnostic studies from 2015.

demands for sedentary work. (Record at Page ID# 3483–84.) Dr. Fox likewise found no findings of concern in the 2015 diagnostic imaging, and noted no gait, sensory, reflex or motor deficits in recent examinations. (*Id.* at Page ID# 3333.) Plaintiff offers no response to these points.

With respect to Dr. Norris, although Plaintiff claims that the Court should not credit his report because Unum employed him as a consultant, she conducted no conflict discovery on that point and, in any case, none of her arguments undermine his report. First, although Plaintiff claims that Dr. Norris challenged her credibility, he merely pointed out that the findings of her **own treating providers** on exam were inconsistent with her reported level of impairment. (Record at Page ID# 4007.) The cases Plaintiff cites are inapposite because they involve situations where insurers relied solely on file reviews, discounted records based only on subjective complaints of pain, or failed to address the support of treating providers. *E.g.*, *Okuno v. Reliance Standard Life Insurance Company*, 836 F.3d 600, 610 (6th Cir. 2016); *Shaw*, 795 F.3d at 550; *Moon v. UnumProvident Corporation*, 405 F.3d 373, 382 (6th Cir. 2005). Here, Dr. Norris specifically relied on Plaintiff's own treating providers as well as Dr. Lin's IME report.

Second, Plaintiff misinterprets the applicable case law when she claims that the law "required" Dr. Norris to accept as valid the conclusions set forth in the FCE. In *Meyer v. Metropolitan Life Insurance Company*, 341 F. Supp. 2d 865 (S.D. Ohio 2004), the Court explained that, although a non-examining physician must review and accept "documented" findings "by a treating physician," if the physician's conclusion is "not supported by objective testing or documented, reasoned analysis . . . the opinion is entitled to little weight." *Id.* at 872. Mr. Secrest, who performed a one-time FCE, is not a treating physician, and tellingly, Plaintiff does not argue that Unum must accept as valid the findings of her own treating physicians, none of whom support her disability claim. And when Dr. Norris considered the FCE, he expressly

12

found Mr. Secrest's findings inconsistent with those in "contemporaneous examinations by treating physicians." (Record at Page ID# 3578.) Further, while Plaintiff reiterates that an FCE is the "best evidence" of physical capacity, her cases merely reinforce an FCE as one type of proof, and do not imply that the Court should credit a one-time FCE over the contrary conclusions of Plaintiff's treating providers, an IME physician, and two physician consultants. *E.g.*, *Shaw*, 795 F.3d at 548; *Brooking v. Hartford Life & Acc. Ins. Co.*, 167 F. App'x 544, 549 (6th Cir. 2006).

Third, Plaintiff's description of Dr. Norris's opinion as "internally inconsistent" does not survive any considered review of the record. Plaintiff claims that Dr. Norris "endorsed" the FCE because he noted that the restrictions identified by Mr. Secrest were largely consistent with a sedentary job. (*See* Record at Page ID# 4006–07.) But Dr. Norris explicitly deferred comments related to positional changes to Unum's vocational consultants, and plainly disagreed with the conclusion that Plaintiff only had a "sub-sedentary level capacity." (*Id.* at Page ID# 4007.)

Fourth, re-airing earlier arguments, Plaintiff criticizes Dr. Norris for concluding that the FCE and Dr. Minard's opinion carried less clinical weight, in part based on the findings in Dr. Lin's IME report. Although Unum refers the Court to its initial brief as to why there is no compelling record evidence to undermine Dr. Lin's report, the record confirms that Dr. Norris did not merely rely on Dr. Lin's report, but also cited countervailing evidence from Plaintiff's neurologist and physiatrist, treatment notes, and imaging. (*Id.* at Page ID# 4005–09.)

Finally, although Plaintiff suggests that Dr. Norris reached his conclusion based solely on her reported activities, the record demonstrates that Dr. Norris focused on the clinical record, and merely noted that several activities reported by Plaintiff—including driving, grocery shopping, laundry, gardening, and photography, and not merely those cited in Plaintiff's brief—were

13

consistent with sedentary capacity.[8] (*Id.* at Page ID# 4008.) And although Plaintiff criticizes the fact that Dr. Norris noted she cares for two young children, that observation related to physical capacity, and is not, as Plaintiff asserts, an example of unconscious bias. For example, Dr. Fox pointed out that Plaintiff took care of her 4-year old and 2-year old children (noting that a 2-year old female weighed 21.5 pounds), and Dr. Natalie reported that Plaintiff's symptoms worsened with the "bending, lifting, and twisting" necessary "in her capacity as a mom." (*Id.* at Page ID# 333.) In that vein, Sixth Circuit courts often consider whether fathers care for young children in a functional capacity analysis. *E.g.*, *Myland v. Comm'r of Soc. Sec.*, No. 17-1591, 2017 U.S. App. LEXIS 22839, at *4 (6th Cir. Nov. 13, 2017); *Fisher v. Astrue*, No. 5:09-cv-1649, 2010 U.S. Dist. LEXIS 78248, at *12–13 (N.D. Ohio Aug. 2, 2010). As explained previously, Dr. Fox and Dr. Norris provided detailed assessments of the record, and, like Plaintiff's treating physicians, reasonably concluded that Plaintiff could perform a full-time, sedentary position.

### B. Plaintiff's Own Evidence is Minimal and Unpersuasive.

Having spent the majority of her opposition brief attempting to undermine the many grounds on which Unum relied in discontinuing benefits, Plaintiff offers little when addressing the key issue—that is, whether she can carry her burden of proof of disability. *E.g.*, *Farhner*, 645 F.3d at 343. In brief, Plaintiff's record support is an IME from 10 years ago and the consultants she secured for her administrative appeal. The few treatment records that Plaintiff cites largely date back to 2015, years before Unum discontinued her benefits. And it's difficult to understand why an IME physician's belief that Plaintiff could not yet perform full-time, sedentary work in 2011 should carry more weight than the report of an IME physician in 2018, when Unum

---

[8] For example, it is not unreasonable to view completing an MBA degree (one of the cited activities) as consistent with sedentary capacity, and Unum's vocational specialists noted that an MBA would qualify her for a broader range of positions. (Record at Page ID# 3277, 3469.)

discontinued benefits. Further, Unum's physician and vocational consultants addressed the conclusions of the FCE, vocational report, and IME report that Plaintiff secured for her appeal, and reasonably concluded that those findings did not outweigh the clinical record, including the opinions of Plaintiff's own treating physicians. For example, although Plaintiff highlights her 2015 imaging, Dr. Fox pointed out that, although the imaging suggested the potential for neural compromise and degenerative changes typical with aging, Plaintiff's treatment notes did not document any gait, sensory, reflex, or motor deficits. (*Id.* at Page ID# 3274–75, 3333). Dr. Natalie, who ordered those studies, does not support her disability, and found "[n]o evidence for radiculopathy on examination." (*Id.* at Page ID# 3107.) Further, Plaintiff rarely saw Dr. Natalie, the only provider treating her chronic back pain, and deferred physical therapy, although in the year preceding her 2011 IME, she regularly visited Dr. Seeder, and attended therapy. (Record at Page ID# 665–785, 3105–3128.) In sum, at minimum, Unum had a "reasonable explanation" for its decision. *Schwalm*, 626 F.3d at 308 (6th Cir. 2010); *McDonald*, 347 F.3d at 169.

## III.  **Unum Did Not Import an "Accommodation Provision" in its Determination.**

There is likewise no merit to Plaintiff's argument that Unum cannot consider potential accommodations when determining whether a claimant can perform alternative gainful occupations. Although Plaintiff claims that Unum ignored *Shaw v. AT&T Umbrella Benefit Plan No. 1*, 795 F.3d 538 (6th Cir. 2015), where a plan expressly allowed the administrator to consider accommodations, *id.* at 541–42, the fact that other plans expressly contemplate accommodations is not persuasive evidence that Unum cannot consider reasonable accommodations.[9] In fact,

---

[9] As the Sixth Circuit recently recognized, when forming contracts, "[d]rafters sometimes include superfluous terms to make certain that no question remains on a given point." *Golf Vill. N. LLC v. City of Powell*, 826 F. App'x 426, 442 (6th Cir. 2020).

Plaintiff's interpretation simply imports a requirement into the Policy that Unum identify gainful occupations "without any accommodation necessary."

As Unum explained in its initial brief, the case law does not support Plaintiff's theory. Notably, Plaintiff offers no response to Unum's explanation that the Ninth Circuit case she cites, *Saffle v. Sierra Pacific Power Company Bargaining Unit LTD Income Plan*, 85 F.3d 455 (9th Cir. 1996), only criticized the consideration of accommodations in the context of a "regular occupation" analysis during the first 24 months of benefits, as opposed to later benefits predicated on disability from "any occupation." *Id.* at 457, 459. The Ninth Circuit underscores this distinction, pointing out that where, as here, the definition of disability after 24 months of benefits turns on whether a claimant can perform the duties of "any" gainful occupation for which she is "reasonably fitted" (*see* Record at Page ID# 153), "a plan administrator **may consider** whether a reasonable accommodation would enable the claimant to work." *Tenney v. BankAmerica Corp. Employee Benefits Administrative Committee*, No. 98-16200, 1999 U.S. App. LEXIS 16024, at \*10 (9th Cir. July 13, 1999) (emphasis added); *see Tebo v. Sedgwick Claims Mgmt. Servs.*, 848 F. Supp. 2d 39, 58 (D. Mass. 2012) (same).[10]

Plaintiff effectively concedes that courts in this Circuit allow disability insurers to consider accommodations, even where accommodations are not specifically contemplated in the applicable policies. *E.g.*, *Bustetter v. Standard Ins. Co.*, No. 18-1-DLB-EBA, 2021 U.S. Dist. LEXIS 59489, at \*24 (E.D. Ky. Mar. 29, 2021); *see Shields v. Unum Provident Corp.*, No. 2:05-cv-744, 2009 U.S. Dist. LEXIS 136552, at \*11 (S.D. Ohio Sep. 22, 2009) (upholding the denial

---

[10] The only other case Plaintiff cites as support is *Pelchat v. Unum Life Insurance Company of America*, No. 3:02-cv-7282, 2003 U.S. Dist. LEXIS 8095 (N.D. Ohio Mar. 25, 2003), which did not deal with any accommodation issue, and cited *Saffle* solely for the proposition that "an administrator lacks discretion to rewrite the Plan." *Id.* at \*32 (quoting *Saffle*, 85 F.3d at 460). As explained above, *Saffle* is inapposite to this case's "any gainful occupation" analysis, and *Pelchat* is likewise not relevant or persuasive authority for Plaintiff's accommodation argument.

of benefits where the plaintiff could perform sedentary/light work "with accommodation"). Rather than pressing her point as to accommodation, Plaintiff merely argues that her situation is different from *Bustetter*, where the Court rejected an FCE because it failed to account for accommodations, *id.* at *24, because Mr. Secrest, who prepared the FCE, and Joseph Atkinson, MS, CRC, who prepared the vocational report, stated that Plaintiff could not be accommodated. But Mr. Secrest, in his FCE report, simply noted that "most employers" would not consider positional changes reasonable, without considering alternative accommodations or the occupations identified by Unum. (Record at Page ID# 3558.) And Mr. Atkinson concluded that Plaintiff could not perform full-time, sedentary work based largely on the findings of Dr. Minard and Mr. Secrest, while Kelly Marsiano, MS, CRC, a vocational consultant for Unum, responded to his concerns by noting that a sit/stand desk would allow for positional changes, and observing that the office context would offer opportunities for brief walking. (*Id.* at Page ID# 3838–39.) Although Plaintiff claims that Unum assumed "without evidence" that she could be accommodated, the record confirms that Unum relied on certified vocational consultants who found Plaintiff "reasonably fitted" for several other gainful occupations. (Record at Page ID# 3468–69, 3838–39.) Ms. Marsiano explained that sit/stand desks are "prevalent in office work and . . . available for the occupations identified." (*Id.* at Page ID# 3839.) And Dr. Natalie, Plaintiff's physiatrist, stated that she had the capacity to change position as needed throughout the day. (*Id.* at Page ID# 3090.) In sum, Unum properly relied on its credentialed vocational consultants in determining that Plaintiff could perform a full-time, sedentary occupation.

## IV.   Plaintiff Offers No Persuasive Evidence That Unum's Structural Conflict Played Any Role in its Decision.

Plaintiff next claims without basis that, given Unum's structural conflict as both insurer and payor of claims, it discontinued her benefits out of self-interest. Although Plaintiff  initially

asserted a variety of theories, she retains only one in her opposition brief—that, in asking Plaintiff to participate in an IME, Unum relied on a "biased" physician (Dr. Lin). But she can only rely on conjecture because she failed to conduct the conflict discovery available where a plaintiff "has done more than merely allege bias." *E.g.*, *Canter v. Ankermes Blue Care Elect Preferred Provider Plan*, 328 F.R.D. 485, 495–96 (S.D. Ohio 2018).

Because she chose not to pursue this discovery, Plaintiff cannot point to any compelling evidence that shores up her theory that Unum's structural conflict played a "significant role" in its decision. *See Thompson v. Transam Trucking Inc.*, 750 F. Supp. 2d 871, 882–83 (S.D. Ohio 2010) ("[T]here must be some evidence that the alleged conflict of interest affected the plan administrator's decision to deny benefits."). For example, she claims that Dr. Lin must be biased because the company with which he is affiliated states that it "partner[s]" with insurers to provide "answers to the often complex medical-legal questions that dominate your claims management issues and impact your bottom line." (Record at Page ID# 4269.) Although Plaintiff criticizes this language as evidence that Dr. Lin would help Unum make its claims decisions "defensible"—and states that Dr. Lin rendered "an opinion that did just that" (Pl's Opp. Br. at Page ID# 4348)—a "defensible" claim decision is not the same as a biased decision. There is no evidence that Unum "repeatedly retained" Dr. Lin, *see Shaw*, 795 F.3d at 547, no evidence that Unum had any contractual relationship with DOC that resulted in improper denials of claims, and no evidence to undermine the physical exam that Dr. Lin conducted. And while Dr. Minard criticized Dr. Lin's comment related to Waddell's signs, the record is clear that Dr. Lin only mentioned Waddell's signs in passing, and they did not play any significant factor in his conclusions. Notably, Dr. Minard made no other comments to challenge any of Dr. Lin's other findings. Further, Dr. Lin's findings actually comported with those of Plaintiff's own treating

18

physicians, and Plaintiff can hardly accuse her own providers of bias.[11] Simply put, there is no record evidence that Unum discontinued Plaintiff's benefits on the basis of self-interest.

## V.  **The Sixth Circuit Does Not Permit An Order Rewriting the Policy.**

Although the administrative record amply supports a reasonable basis for Unum's decision here, even if Plaintiff could prove otherwise, there is no authority for her request that the Court "forbid Unum from terminating [her] benefits again" without "compelling evidence" of improvement. (Pl's Opp. Br. at Page ID# 4349.) Plaintiff concedes that there is no Sixth Circuit authority for what she recognizes as the "extraordinary remedy"[12] that she requests. (*Id.*) She argues, instead, that, because the Sixth Circuit has never specifically rejected the argument, this court should exercise its discretion to grant extraordinary relief. Although Plaintiff might cite to cases from district courts outside the Sixth Circuit where factual circumstances required a unique remedy,[13] she fails to acknowledge that this Court disfavors any attempt to circumvent the terms of an ERISA plan by way of a Court order as to future benefits. *E.g.,Haning v. Hartford Life & Accident Ins. Co.*, 140 F. Supp. 3d 654, 676 (S.D. Ohio 2015); *Osborn v. Principal Life Ins. Co.*, No. 2:17-cv-329, 2017 U.S. Dist. LEXIS 166877, at *10 (S.D. Ohio Oct. 10, 2017); *Jeffries v.*

---

[11] In passing, Plaintiff notes that the Court held that Unum could not raise an argument in *Jalali I* that it did not raise during the administrative process. (Pl's Opp. Br. at Page ID# 4349). That comment has no bearing on her theory that Unum's structural conflict affected its decision.

[12] The parties agree that, where an insurer has no reasonable basis for discontinuing benefits, the ordinary remedy is to reinstate benefits retroactively, and return the claim to the insurer to administer as normal. (Pl's Motion at Page ID# 4270–71.)

[13] As Unum pointed out in it is initial brief, decisions from courts outside the Sixth Circuit are not binding, and, as set forth above, Sixth Circuit case law holds otherwise. And to the extent that there could someday be a case where the Court would overcome its unwillingness to rewrite ERISA plans, it is unlikely to be a case where the claimant's treating providers do not support her disability, and multiple in-house reviews as well as an IME all resulted in reports that agreed with claimant's treating providers that the claimant could perform full-time, sedentary work. These record facts at very least confirm a rational basis for Unum to discontinue benefits, and do not suggest that there would not be "any ground" in the future for Unum to deny benefits. *Foust v. Lincoln Nat'l Life Ins. Co.*, 416 F. Supp. 3d 1319, 1333 (D. Utah 2019).

*Prudential Ins. Co.*, No. C-1-01-680, 2003 U.S. Dist. LEXIS 27365, at \*11–12 (S.D. Ohio Dec. 4, 2003), *adopted by* 2004 U.S. Dist. LEXIS 30293 (S.D. Ohio Apr. 29, 2004).

As Unum explained previously, it is Plaintiff's burden under the Policy to provide proof of continuing disability (Record at 105, 115, 120), and Plaintiff's proposed remedy asks this Court to alter the terms of that Policy and impermissibly shifts the burden of proof to Unum. As such, even if the administrative record warranted a remedy in Plaintiff's favor—which it does not—her request for future benefits is outside the purview of this Court's expressed authority.

## CONCLUSION

Based on the administrative record, Unum did not act arbitrarily or capriciously in discontinuing Plaintiff's benefits. This is not a case where a plaintiff claims that a plan administrator acted unreasonably because it failed to request an IME, or because it failed to properly weigh the opinions of her treating providers. Despite Plaintiff's efforts to revive the administrative record from a decade ago, the administrative record relevant to this litigation looks very different. There is no dispute that Unum requested an IME, reviewed the records of Plaintiff's treating providers, conducted multiple in-house clinical and physician reviews of the record, and requested reviews of vocational specialists who identified several gainful occupations for which Plaintiff was reasonably fitted. On a record where none of Plaintiff's four treating providers state that she has any disabling restrictions or limitations, an IME physician agrees with her primary provider that she can perform full-time, sedentary work, and Unum's physician consultants concluded the same, Unum at minimum had a reasonable basis for discontinuing benefits. As such, Unum respectfully requests that the Court grant Unum's motion for judgment on the record, deny Plaintiff's corresponding motion, and dismiss the Complaint against Unum, with prejudice.

Respectfully submitted,

s/ Olivia Lin Southam
Brett K. Bacon (0022826)
bbacon@frantzward.com
Olivia Lin Southam (0085476)
osoutham@frantzward.com
FRANTZ WARD LLP
200 Public Square, Suite 3000
Cleveland, Ohio 44114
(216) 515-1660
(216) 515-1650 (facsimile)

*Counsel for Defendant*
*Unum Life Insurance Company of America*

## <u>CERTIFICATE OF SERVICE</u>

A copy of the foregoing was filed electronically on November 22, 2021.  Notice of this

filing will be sent to all parties by operation of the Court's electronic filing system.


s/ Olivia Lin Southam
*Counsel for Defendant*
*Unum Life Insurance Company of America*